DECISION
{¶ 1} Defendant-appellant, William M. Cline, III ("appellant"), appeals from the July 20, 2005 judgment of the Franklin County Court of Common Pleas denying his petition for post-conviction relief.
 {¶ 2} The charges in this case arise out of an accident that occurred on August 1, 2003, in Columbus, Ohio. The following facts are taken from the plea hearing as they were read into the record by the prosecutor. Appellant was operating a Ford pickup truck when he lost control, traveled over the centerline and struck a Mercury, carrying an adult and two children, causing damage to the back of the vehicle. Appellant continued down the road swerving, striking a Cadillac carrying three adults and one infant. Appellant then continued in the correct lane of travel until he arrived at an intersection, and struck, head-on, an Eagle Talon carrying two adults. One of the occupants, Ms. Deborah White, died as a result of the injuries she sustained in the accident. The other occupant, Mr. Tracie Miller, had to be cut from the wreckage, and sustained serious injuries, including one to his right leg requiring the placement of a rod. At the hospital, two hours and forty-five minutes after the accident, appellant's blood alcohol tested between 0.14 and 0.15. The State was prepared to have a toxicologist relate the test results back to the time of the accident.
 {¶ 3} On February 3, 2004, appellant was indicted on one count of aggravated vehicular homicide while under the influence of alcohol or drugs, a second degree felony, one count of aggravated vehicular homicide committed recklessly, a third degree felony, one count of aggravated vehicular assault while under the influence of alcohol or drugs, a third degree felony, one count of aggravated vehicular assault committed recklessly, a fourth degree felony, and one count of driving while under the influence of alcohol or drugs, a first degree misdemeanor. On June 28, 2004, appellant entered a plea of guilty to one count of aggravated vehicular homicide, a second degree felony, and one count of aggravated vehicular assault, a third degree felony. As a result of the plea, a nolle prosequi was entered to the remaining counts in the indictment as well as to one count of robbery contained in a separate case, State v. Cline, Franklin C.P. No. 04CR-1881. A sentencing hearing was held on August 17, 2004, and the trial court imposed a seven-year prison term on the aggravated vehicular homicide, and a three-year prison term on the aggravated vehicular assault, to be served concurrently. No direct appeal was taken.
 {¶ 4} On March 15, 2005, appellant filed a post-conviction petition pursuant to R.C. 2953.21, raising six claims. On April 14, 2005, appellant filed an amended petition adding a seventh claim. On May 31, 2005, the trial court held an evidentiary hearing, and on July 20, 2005, the trial court denied appellant's petition for post-conviction relief. Appellant appeals that judgment, and asserts the following six assignments of error for our review:
First Assignment of Error:
The Trial Court erred in finding that defense counsel was not ineffective in misleading Defendant Cline as to the potential term of incarceration which would accompany his guilty plea.
Second Assignment of Error:
The Trial Court erred in finding that the failure to move for the suppression of the blood tests taken from Defendant Cline did not constitute ineffective assistance of counsel.
Third Assignment of Error:
The Trial Court erred in finding that defense counsel's failure to consult with Defendant Cline as to whether or not a motion to suppress should be filed did not constitute ineffective assistance of counsel.
Fourth Assignment of Error:
The Trial Court erred in finding that defense counsel's failure to conduct an adequate pretrial investigation of the State's allegations did not constitute ineffective assistance of counsel.
Fifth Assignment of Error:
The Trial Court erred in finding that defense counsel was not ineffective when the cumulative prejudice arising from defense counsel's errors requires reversal.
Sixth Assignment of Error:
The Trial Court erred in finding that Defendant Cline's plea of guilty was voluntary.
 {¶ 5} "A petition for postconviction relief is a statutory vehicle designed to correct the violation of a defendant's constitutional rights." State v. Hessler, Franklin App. No. 01AP-1011, 2002-Ohio-3321 at ¶ 22. Though designed to address alleged constitutional violations, the post-conviction relief process is a civil collateral attack on a criminal judgment, not an appeal of that judgment. State v. Calhoun (1999),86 Ohio St.3d 279, 281; State v. Steffan (1994), 70 Ohio St.3d 399,400. It is a means to reach constitutional issues which would otherwise be impossible to reach because the evidence supporting those issues is not contained in the record of the petitioner's criminal conviction. Id. at ¶ 23, citing State v. Murphy (Dec. 26, 2000), Franklin App. No. 00AP-233. A post-conviction relief petition does not provide a petitioner a second opportunity to litigate his or her conviction. Id.
 {¶ 6} When a trial court rules on a petition for post-conviction relief after a hearing, an appellate court will give deference to the trial court's finding of fact. State v.Braden, Franklin App. No. 02AP-954, 2003-Ohio-2949, certiorari denied, 100 Ohio St.3d 1431. As such, it is within the province of the trial court during the evidentiary hearing as a trier of fact to determine the credibility of witnesses. State v.Waddell (Feb. 2, 1999), Franklin App. No. 98AP-676.
 {¶ 7} The grounds for relief contained in appellant's post-conviction petition are claims of ineffective assistance of counsel. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v.Washington (1984), 466 U.S. 668, 686, 104 S.Ct. 2052. In order to establish a claim of ineffective assistance of counsel, a defendant must first demonstrate that his trial counsel's performance was so deficient that it was unreasonable under prevailing professional norms. Id. at 687. The defendant must then establish "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.
 {¶ 8} According to Strickland:
A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
Id. at 687.
 {¶ 9} "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689, quotingMichel v. Louisiana (1955), 350 U.S. 91, 101, 76 S.Ct. 158.
 {¶ 10} When challenging a guilty plea on the basis that it was not knowingly, intelligently, and voluntarily made, a defendant must show a prejudicial effect. State v. Nero (1990),56 Ohio St.3d 106. The test is whether the plea would have otherwise been made. Id.; State v. Mitchell, Trumbull App. No. 2004-T-0139, 2006-Ohio-618. Thus, pursuant to Strickland,
appellant must demonstrate that he was prejudiced by his trial counsel's erroneous misrepresentations, which according toNero, requires that he demonstrate, but for his counsel's alleged ineffectiveness, he would not have entered the pleas, and instead insisted on going to trial.
 {¶ 11} In his first assignment of error, appellant contends that his trial counsel was ineffective for "misleading" him as to his eligibility for judicial release.[1] While we agree with appellant that his trial counsel misinformed him as to his eligibility for judicial release, we do not agree with appellant's contention that he was prejudiced by said conduct. The record does not support appellant's contention that his guilty pleas were influenced by counsel's statement that he would be eligible to apply for judicial release.
 {¶ 12} Appellant and his parents testified that trial counsel, Ms. Sallynda Rothchild Dennison ("Dennison"), told them that if appellant entered a guilty plea, he would be released after two and one-half years. During her testimony, Dennison clearly refuted this, and explained that she was under the belief that appellant would be able to apply for judicial release after serving half of his sentence, but that at no time did she ever guarantee that judicial release would be granted.
 {¶ 13} At neither the plea hearing, nor the sentencing hearing, was there any mention, by either the trial court or trial counsel, regarding appellant's eligibility for judicial release. At the plea hearing, the prosecutor stated the maximum penalties for each offense, and that there "is a mandatory prison time offense for both Count One and Count Three." (June 28, 2004, Tr. at 3.) Further, just prior to going through the Crim.R. 11 colloquy of appellant's rights, the trial court informed appellant of the possible sentences for each count to which he was pleading guilty, and summarized as follows:
The Court: If the Court so desires, you could receive maximum sentences on each one. They could run consecutive, which means you can get eight years on Count One, you can get five years on Count Three for a total, if it was run consecutive, 13 years in the state penitentiary. Maximum fines not to exceed $25,000 on both charges. * * *
Now, there is a mandatory driver's license suspension and that would be a lifetime suspension dealing with Count One.
Do you understand all the penalties involved with respect to entering these pleas?
[Appellant]: Yes.
The Court: Do you have any questions about that?
[Appellant]: No.
(June 28, 2004 Tr. at 5.)
 {¶ 14} Lastly, the plea form that appellant signed plainly states:
I understand that R.C. 2929.13(F) requires mandatory prison term(s) for the following offenses and that I will not be eligible for community control sanctions, judicial release, or earned days of credit in relation to this/these term(s).
(July 28, 2004 Plea Form.)
 {¶ 15} Not once, during either the plea or sentencing hearings, did appellant ask any questions regarding the penalties involved for the charges to which he was pleading guilty, nor did appellant inquire as to any possibilities for judicial release or applying for the same. In exchange for his plea of guilty to one count of aggravated vehicular homicide, and one count of aggravated vehicular assault, a nolle prosequi was entered as to the three remaining counts in the indictment, as well as to the robbery charge in Franklin C.P. No. 04CR-1881. In denying his petition for post-conviction relief, the trial court found that appellant's, and his parents', testimony "was totally incredible." (July 20, 2005, Entry at 3.) The trial court found that given the nature of the charges in this case, the separate robbery case, and appellant's prior experience with the criminal court system, an expectation of serving only two years was unreasonable.
 {¶ 16} Given the record and the trial court's findings, we find that appellant has failed to demonstrate that he was prejudiced by his counsel's erroneous representation regarding judicial release. In other words, we do not find that appellant is able to demonstrate that, but for his trial counsel's erroneous information, he would not have entered the plea of guilty, and insisted on going to trial. Trial counsel admitted that she was not correct as to her belief regarding judicial release. However, given the trial court's credibility findings of the witnesses that testified at the evidentiary hearing, the fact that even if eligible, there is no guarantee that appellant's request for judicial release would ever be granted, and given that appellant received, in exchange for his guilty plea to two counts of the indictment, a nolle prosequi to four other charges that he was facing in two separate cases, we do not find that appellant has demonstrated that he would not have entered the plea, but for the misrepresentation regarding judicial release.
 {¶ 17} Appellant relies on State v. Davis, 2nd App. No. 2003-CA-87, 2004-Ohio-5979, in support of his position that his trial counsel's conduct renders counsel ineffective. The court inDavis stated, "[w]e conclude that requiring the trial court to determine that a defendant understands he is ineligible for judicial release is a salutary interpretation of Crim.R. 11(C)(2)(a) which furthers the purpose of Crim.R. 11(C)(2)(a) that pleas of guilty and no contest be voluntarily and intelligently made * * *" Id. at ¶ 28. While Davis may render support to appellant's argument, we find that Davis is not binding on this court, nor is it in accordance with other Ohio appellate districts that have encountered similar circumstances. See State v. Mitchell, 11th App. No. 2004-T-0139,2006-Ohio-618, certiorari denied, ___ Ohio St.3d ___,2006-Ohio-2998 (the trial court's and trial counsel's erroneous misrepresentations regarding judicial release eligibility did not invalidate a guilty plea where the trial court complied with Crim.R. 11); State v. Cvijetinovic, 8th App. No. 81534, 2003-Ohio-563 (guilty plea upheld where the record failed to demonstrate that defendant relied upon the trial court's misstatements about judicial release); State v. Taylor,
12th App. No. 2003-07-025, 2004-Ohio-3171, certiorari denied,103 Ohio St.3d 1526 (guilty plea upheld where record did not reflect that the decision to plead guilty was influenced by the trial court's erroneous information regarding his eligibility for judicial release); State v. Blackshear (Sept. 19, 2001), 7th App. No. 00 C.A. 240 (under the circumstances, trial counsel's misrepresentations regarding eligibility for judicial release did not invalidate guilty plea).
 {¶ 18} For the foregoing reasons, we find appellant's first assignment of error to be without merit. Consequently, appellant's first assignment of error is overruled.
 {¶ 19} In his second assignment of error, appellant argues that his counsel was ineffective for failing to file a motion to suppress the results of the blood tests taken from appellant. Specifically, appellant argues that a motion to suppress should have been filed because the test was taken outside the two-hour time requirement of R.C. 4511.19(D)(1), and because the test may have been performed by a lab or person not certified by the Ohio Department of Health to perform blood testing.
 {¶ 20} Appellant devotes much of his brief to the distinction between a "per se" OMVI offense and an "actual impairment" OMVI offense.[2] The issue, however, is whether appellant can overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, that is to say that the complained of action might be considered sound trial strategy. Strickland, 668.
 {¶ 21} "`Failure to file a suppression motion does not constitute per se ineffective assistance of counsel.'" State v.Madrigal (2000), 87 Ohio St.3d 378, 389, certiorari denied,531 U.S. 838, 121 S.Ct. 99, quoting Kimmelman v. Morrison (1986),477 U.S. 365, 384, 106 S.Ct. 2574. "`Where the record contains no evidence which would justify the filing of a motion to suppress, the appellant has not met his burden of proving that his attorney violated an essential duty by failing to file the motion.'" State v. Tibbetts (2001), 92 Ohio St.3d 146, 166, certiorari denied (2002), 534 U.S. 1144, 122 S.Ct. 1100, quotingState v. Gibson (1980), 69 Ohio App.2d 91, 95. "Failure to file a motion to suppress constitutes ineffective assistance of counsel only if, based on the record, the motion would have been granted." State v. Randall, Franklin App. No. 03AP-352,2003-Ohio-6111, at ¶ 15. Cf. State v. Delmonico, Ashtabula App. No. 2003-A-0022, 2005-Ohio-2902, at ¶ 20 (stating that to establish prejudice under Strickland, "an appellant must prove more than a mere possibility that the motion could have been granted; rather, he or she must show a reasonable probability
that, but for the omission, the result of the proceedings would have been different"). (Emphasis sic.)
 {¶ 22} Similarly, it is well-established that decisions regarding what stipulations should be made, what evidence is to be introduced, what objections should be made, and what pretrial motions should be filed, primarily involve trial strategy and tactics. State v. Edwards (1997), 119 Ohio App.3d 106, citingUnited States v. Teague (C.A.11, 1992), 953 F.2d 1531, certiorari denied 79 Ohio St.3d 1484. Moreover, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."Wiggins v. Smith (2003), 539 U.S. 510, 123 S.Ct. 2527, 2535, quoting Strickland v. Washington, 466 U.S. at 690-691,104 S.Ct. 2052.
 {¶ 23} Dennison testified at the evidentiary hearing that she researched the suppression issue and consulted other attorneys with experience in this area. She also attended a continuing legal education program on this specific topic during the pendency of this case. Given her findings, Dennison testified that she did not feel that the issue was worth pursuing because a motion to suppress would not have been meritorious. The trial court stated at the conclusion of the evidentiary hearing that given the legal landscape at the time, a motion to suppress the blood test results would have been overruled. Further, Dennison testified that according to her discussions with the prosecutor handling the case, the filing of a motion to suppress would have affected the plea offer, in that the offer would no longer be available. The trial court found Dennison credible, and we find that the foregoing establishes tactical reasons for not filing a suppression motion.
 {¶ 24} Given Dennison's testimony and the fact that the plea offer would have been affected by filing an unmeritorious motion, we find that appellant is unable to overcome the presumption that the challenged action was anything but sound trial strategy. Consequently, we find that appellant is unable to demonstrate that his counsel was ineffective, and accordingly, we overrule appellant's second assignment of error.
 {¶ 25} In his third assignment of error, appellant contends that his counsel was ineffective for not informing him of the suppression issues and the potential ramifications of the same. We have already determined that appellant was unable to demonstrate that his counsel was ineffective for failing to file a motion to suppress. Therefore, we cannot conclude that Dennison's alleged failure to inform her client of these issues rises to the level of ineffective assistance of counsel. SeeState v. Ramos (Mar. 15, 2000), 9th App. No. 90CA007203. Accordingly, we overrule appellant's third assignment of error.
 {¶ 26} In his fourth assignment of error, appellant contends that his counsel was ineffective for failing to conduct adequate pretrial investigations. Specifically, appellant alleges that his counsel did not discuss the state's evidence with him, did not permit him to review photos of the accident scene, did not obtain appellant's hospital records, did not interview witnesses, and failed to correct the trial court when it asserted at the sentencing hearing that appellant had a previous conviction for robbery. However, we are unable to conclude from the record before us that appellant's trial counsel failed to conduct adequate pretrial investigation of this case.
 {¶ 27} First, we note that appellant makes these allegations, then merely concludes that clear prejudice to him has been shown through the preceding assignments of error. We disagree. Dennison testified as to the preparation undertaken in this case. She described that appellant and his parents indicated to her that there were witnesses in two other cars that could testify that appellant was not driving erratically. However, appellant did not get the full names, or any information, of these witnesses so that Dennison could complete any follow-up. Dennison also related that her file consisted of everything the prosecutor had. With respect to accident photos, she dissuaded appellant and his family from looking by asking if they were sure that they wanted those images in their heads, at which point, according to Dennison, appellant and his parents agreed that they did not, and, therefore, did not look at the photos. As discussed previously, Dennison researched several of the issues and decided that a suppression motion was not worth pursuing, and after further investigation that an accident reconstructionist would not be worthwhile, given the limited funds that were available.[3]
 {¶ 28} Upon review of the record, we find that appellant is unable to demonstrate that, but for, his trial counsel's alleged ineffectiveness with respect to pretrial investigation that he would not have entered a guilty plea, and would instead have insisted on going to trial. Accordingly, appellant's fourth assignment of error is overruled.
 {¶ 29} In his fifth assignment of error, appellant argues that the cumulative errors of his trial counsel rendered his counsel ineffective. Finding no instances of ineffective assistance of counsel, we find no cumulative error as a result of the combined effect of the alleged instances of ineffective assistance of counsel. Consequently, appellant's fifth assignment of error is overruled.
 {¶ 30} In his sixth assignment of error, appellant attacks the voluntariness of his guilty plea based on the allegations contained in the previous five assignments of error. As discussed in relation to appellant's first assignment of error, when challenging a guilty plea on the basis that it was knowingly, intelligently, and voluntarily made, a defendant must show a prejudicial effect. Nero, supra at 106. The test is whether the plea would have otherwise been made. Id.; State v. Mitchell,
Trumbull App. No. 2004-T-0139, 2006-Ohio-618. There is no contention that the trial court did not comply with Crim.R. 11 at the plea hearing. Rather, the crux of appellant's argument is that he was misinformed by his trial counsel about his eligibility for judicial release. For the reasons stated in our discussion regarding appellant's five previous assignments of error, we find that appellant has failed to demonstrate that he was prejudiced by his trial counsel's actions so as to render his plea invalid. Accordingly, we overrule appellant's sixth assignment of error.
 {¶ 31} For the foregoing reasons, appellant's six assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
Brown and Deshler, JJ., concur.
Deshler, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] The record reflects different versions as to the understanding of how much of the sentence had to be served before applying for judicial release. Appellant and his parents testified that trial counsel informed them that appellant would be out in two and one-half years, however counsel testified that she had the understanding that appellant could apply for judicial release after serving one half of the sentence imposed.
[2] While a "per se" OMVI offense relates directly to blood alcohol concentration levels, "actual impairment" OMVI offenses do not. The State indicated in its appellate brief, as well as at oral argument, that this was an "actual impairment" case. Therefore, even if the blood test results were suppressed, the State was prepared to proceed with the remaining evidence, including appellant's statements regarding his use of alcohol and heroin on the day of the accident, and appellant's father's statements about appellant using alcohol that day.
[3] Having no funds available with which to consult experts, Dennison did, however, contact an accident reconstructionist who offered his opinion, at no charge, that pursuing this angle would not be worthwhile.