OPINION
{¶ 1} Defendant-appellant, Marquis A. Hairston, appeals from a judgment of the Franklin County Court of Common Pleas sentencing defendant for multiple convictions arising from a series of home invasions. For the reasons that follow, we affirm, as modified, the judgment of the trial court.
 {¶ 2} On November 14, 2005, a Franklin County Grand Jury indicted defendant on charges arising from three home invasions occurring in September and October 2005.[1] As to the first home invasion, which occurred on September 27, 2005, defendant was indicted on one count of aggravated robbery (count 1), one count of robbery (count 2), one count of aggravated burglary (count 3), one count of burglary (count 4), one count of kidnapping (count 5), one count of theft (count 6), and one count of having a weapon under disability (count 30). All of these counts included firearm specifications, except for the weapon under disability count. The alleged victim in the first home invasion was Cynthia Green.
 {¶ 3} As to the second home invasion, which occurred on October 10, 2005, defendant was indicted on two counts of aggravated robbery (counts 11 and 14), two counts of robbery (counts 12 and 15), two counts of kidnapping (counts 13 and 16), one count of aggravated burglary (count 17), one count of burglary (count 18), one count of theft (count 19), and one count of having a weapon under disability (count 31). The alleged victims in the second home invasion were Melanie Pinkerton and Gary Reames. Defendant was also indicted on one count of receiving stolen property in relation to the property of Ms. Pinkerton and Mr. Reames (count 20). All these counts included firearm specifications, except for the receiving stolen property and weapon under disability counts.
 {¶ 4} As to the third home invasion, which occurred on October 25, 2005, defendant was indicted on one count of aggravated robbery (count 21), one count of robbery (count 22), one count of kidnapping (count 23), one count of aggravated burglary (count 24), one count of burglary (count 25), one count of theft (count 26), one count of receiving stolen property (count 27), and one count of having a weapon under disability (count 32). The alleged victim in the third home invasion was John Maransky. All these counts included firearm specifications, except for the receiving stolen property and weapon under disability counts.
 {¶ 5} Defendant initially pled not guilty as charged in the indictment, and on March 28, 2006, a jury trial began. At the trial, several witnesses testified, including the victims of the home invasions — Ms. Green, Mr. Reames, Ms. Pinkerton, and Mr. Maransky. Before the jury trial resumed on March 31, 2006, defendant pled guilty to most of the counts. Specifically, defendant pled guilty to four counts of aggravated robbery with specifications (counts 1, 11, 14, 21), three counts of aggravated burglary with specifications (counts 3, 17, 24), four counts of kidnapping with specifications (counts 5, 13, 16, 23), and three counts of having a weapon while under disability (counts 30, 31, 32). A nolle prosequi was entered for counts 2, 4, 6, 12, 15, 18, 19, 20, 22, 25, 26, and 27 of the indictment.
 {¶ 6} At the April 5, 2006 sentencing hearing, the trial court indicated that, as to the counts to which defendant pled guilty, it was sentencing him to maximum, consecutive sentences for the 11 first-degree felonies and the three third-degree felonies, and that it was imposing nine years in prison for three gun specifications, for a total prison sentence of 134 years. The trial court entered judgment on April 7, 2006.
 {¶ 7} Defendant appeals from that judgment and sets forth the following six assignments of error for our review:[2]
 ASSIGNMENT OF ERROR NO. 1:
 A TRIAL COURT HAS ERRS [SIC] IT SENTENCES A CRIMINAL DEFENDANT TO CONSECUTIVE SENTENCES WITHOUT MAKING THE NECESSARY FINDING PURSUANT TO O.R.C. SECTION 2929.14(e)(4)(a)(b)(c).
 ASSIGNMENT OF ERROR NO. 2:
 THE TRIAL COURT ERRED IN DETERMINING THAT THE DEFENDANT HAD COMMITTED THE WORST FORM OF THE OFFENSE, THEREFORE, SENTENCING THE DEFENDANT TO THE MAXIMUM TERM.
 ASSIGNMENT OF ERROR NO. 3:
 THE TRIAL COURT ERRS WHERE, FOR SENTENCING PURPOSES, IT FAILS TO MERGE A KIDNAPPING CHARGE WITH AN AGGRAVATED ROBBERY CHARGE, WHERE BOTH CHARGES ARE ALLIED OFFENSES OF SIMILAR IMPORT, PURSUANT TO O.R.C. 2941.25.
 ASSIGNMENT OF ERROR NO. 4:
 THE TRIAL COURT ERRS WHERE, FOR SENTENCING PURPOSES, IT FAILS TO MERGE THREE GUN SPECIFICATIONS FOR WEAPONS UNDER DISABILITY AND GUN SPECIFICATIONS FOR EACH AGGRAVATED ROBBERY AND EACH KIDNAPPING AND EACH AGGRAVATED ROBBERY.
 ASSIGNMENT OF ERROR NO. 5:
 A TRIAL COURT MAY NOT SENTENCE A DEFENDANT TO NON-MINIMUM AND CONSECUTIVE SENTENCES UNDER STATE V. FOSTER (2006), 109 OHIO ST. 3D 1, WITHOUT VIOLATING A DEFENDANT'S CONSTITUTIONAL RIGHTS AS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I. SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION, WHERE THE DEFENDANT'S GUILTY PLEA WAS ENTERED PRIOR TO THE ISSUANCE OF THE FOSTER DECISION.
 ASSIGNMENT OF ERROR NO. 6:
 A TRIAL COURT VIOLATES A CRIMINAL DEFENDANT'S CONSTITUTIONAL RIGHTS WHERE IT IMPOSES A SENTENCE THAT IS SO GREATLY DISPROPORTIONATE TO THE OFFENSE THAT IT SHOCKS THE SENSE OF JUSTICE OF THE COMMUNITY.
 {¶ 8} As a preliminary matter, we note that the Ohio Association of Criminal Defense Lawyers ("OACDL"), as amicus curiae, and with leave of this court, has filed a brief in this appeal. The OACDL's brief sets forth an assignment of error. Because an amicus curiae has no right to become a party to an action and thus may not raise issues not raised by the parties, we address the issues raised by the OACDL only to the extent they are addressed by defendant. See, e.g., State v. D.M. PalletService, Inc. (Nov. 15, 1994), Franklin App. No. 94APC02-195.
 {¶ 9} Because they involve similar issues, we will address defendant's first and second assignments of error together. By his first assignment of error, defendant argues that the trial court did not make the necessary findings or state its reasons for imposing consecutive sentences. Defendant argues under his second assignment of error that the trial court improperly imposed maximum sentences because he did not commit "the worst form of the offense." Defendant's arguments are not persuasive.
 {¶ 10} In State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, the Supreme Court of Ohio, following Blakely v. Washington (2004),542 U.S. 296, 124 S.Ct. 2531, and Apprendi v. New Jersey (2000), 530 U.S. 466,120 S.Ct. 2348, found portions of Ohio's felony sentencing scheme unconstitutional because those portions required judicial fact-finding in violation of a defendant's Sixth Amendment right to a trial by jury. The Foster court severed the unconstitutional provisions from Ohio's felony sentencing laws. See id. at ¶ 90-102 (applying a severance remedy similar to that adopted in United States v. Booker [2005], 543 U.S. 220,125 S.Ct. 738). Pursuant to Foster, "[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Id. at paragraph seven of the syllabus. Here, defendant was sentenced after Foster. Therefore, the trial court had full discretion to impose prison sentences within the applicable statutory ranges and was not required to make findings or give its reasons for imposing maximum and consecutive sentences.
 {¶ 11} In his reply brief, defendant contends that, notwithstanding the application of the severance remedy in Foster, his sentences were contrary to R.C. 2929.11 and 2929.12. Essentially, defendant argues that the trial court did not properly consider the purposes of felony sentencing required by R.C. 2929.11 and 2929.12.
 {¶ 12} Pursuant to Foster, "there is no mandate for judicial fact-finding in the general guidance statutes [R.C. 2929.11 and2929.12]. The court is merely to `consider' the statutory factors." Id. at ¶ 42. In its April 7, 2006 judgment entry, the trial court stated that it had "considered the purposes and principles of sentencing set forth in R.C. 2929.11 and the facts set forth in R.C. 2929.12." That express language in the judgment entry belies defendant's claim that the trial court failed to consider the purposes of felony sentencing required by R.C. 2929.11 and 2929.12. See State v. Daniel, Franklin App. No. 05AP-564, 2006-Ohio-4627, at ¶ 50. See, also, State v. Braxton, Franklin App. No. 04AP-725, 2005-Ohio-2198, at ¶ 27 (stating that "a rote recitation by the trial court that it has considered applicable factors under R.C. 2929.12 is sufficient for the trial court to satisfy its duty"); State v. Sharp, Franklin App. No. 05AP-809, 2006-Ohio-3448, at ¶ 6 (observing that a statement in a judgment entry stating that the court considered the purposes and principles of sentencing supports a conclusion that a trial court considered requisite statutory factors prior to the sentencing of the defendant). In addition, a review of the sentencing hearing transcript reveals the trial court's thoughtful consideration of the purposes and principles of felony sentencing and the factors pertinent to achieving those purposes and principles in this matter.
 {¶ 13} Based on the foregoing, we overrule defendant's first and second assignments of error.
 {¶ 14} By his third assignment of error, defendant argues that the trial court erred in failing to merge, pursuant to R.C. 2941.25, the kidnapping offenses with the aggravated robbery offenses for purposes of sentencing. The state argues that the kidnapping and aggravated robbery offenses do not merge. In his reply brief, defendant argues that the offense of aggravated burglary should merge with each of the underlying criminal offenses. As to that argument, the state contends that we should disregard it, and that it otherwise lacks merit.
 {¶ 15} R.C. 2941.25, Ohio's allied offense statute, protects against multiple punishments for the same criminal conduct which could violate the Double Jeopardy Clauses of the United States and Ohio Constitutions. R.C. 2941.25 provides as follows:
 (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
 {¶ 16} In State v. Rance (1999), 85 Ohio St.3d 632, the Supreme Court of Ohio held that R.C. 2941.25 requires a two-step test. First, courts must compare, in the abstract, the statutorily defined elements of offenses that are claimed to be of similar import. Id. at 638, citing R.C. 2941.25(A). In so doing, "[c]ourts should assess, by aligning the elements of each crime in the abstract, whether the statutory elements of the crimes `correspond to such a degree that the commission of one crime will result in the commission of the other.'" Rance, at 638, quoting State v. Jones (1997), 78 Ohio St.3d 12, 14. Second, "if the elements do so correspond, the defendant may not be convicted of both unless the court finds that the defendant committed the crimes separately or with separate animus." Rance, at 638-639, citing both R.C.2941.25(B) and Jones, at 14.
 {¶ 17} In State v. Savage, Franklin App. No. 02AP-202, 2002-Ohio-6837, at ¶ 41, this court compared aggravated robbery, under R.C. 2911.01, with kidnapping, under R.C. 2905.01, to determine whether the statutory elements of the crimes correspond to such a degree that the commission of one crime will result in the commission of the other. This court reasoned as follows:
 Aggravated robbery under R.C. 2911.01 requires having a deadly weapon on or about the offender's person while attempting, committing or fleeing immediately after a theft offense; kidnapping does not. By contrast, kidnapping under R.C. 2905.01 requires some restraint of liberty by the offender; by its statutory elements, aggravated robbery does not. Consequently, under Rance, the commission of one offense purportedly can occur without the commission of the other and, therefore, these offenses are not allied offenses of similar import. * * *
 {¶ 18} However, in Savage, this court followed State v. Fears (1999),86 Ohio St.3d 329, in which the Supreme Court of Ohio concluded that a kidnapping specification should have merged with an aggravated robbery specification in a capital case and noted, at 344, as follows:
 In [State v. Jenkins (1984), 15 Ohio St.3d 164,] at 198, fn. 29, we stated that "implicit within every robbery (and aggravated robbery) is a kidnapping." Therefore, a kidnapping specification merges with an aggravated robbery specification unless the offenses were committed with a separate animus. R.C. 2941.25(B). Thus, when a kidnapping is committed during another crime, there exists no separate animus where the restraint or movement of the victim is merely incidental to the underlying crime. State v. Logan (1979), 60 Ohio St.2d 126, syllabus. However, where the restraint is prolonged, the confinement is secretive, or the movement is substantial, there exists a separate animus as to each offense. Id.
 {¶ 19} Recognizing the law, as stated in Fears, this court proceeded to the second step of the test discussed in Rance. See Savage. This court analyzed the facts of the case and determined that any restraint or movement was merely incidental to the underlying crime of aggravated robbery. Id. at ¶ 44-45. Therefore, this court concluded that the defendant did not act with a separate animus when he restrained the victim's liberty during the course of the aggravated robbery. Id. at ¶ 45.
 {¶ 20} In view of Savage, it is necessary for this court to determine whether defendant acted with a separate animus when the four victims' liberty was restrained during the course of the aggravated robberies. Defendant argues that each kidnapping count should merge with the underlying offense of aggravated robbery because the restraint was merely incidental to the principal offense and not the consequence of a prolonged restraint.
 {¶ 21} At the plea hearing in which defendant pled guilty to the multiple offenses, the parties stipulated to the facts that already had been introduced as evidence in the matter. We find that those facts demonstrated that the restraint or movement of the victim or victims, in each home invasion, was not merely incidental to the crime of aggravated robbery but had significance independent of that crime.
 {¶ 22} The victim of the September 27, 2005 home invasion was Ms. Green. Ms. Green testified regarding that home invasion as follows. On the morning of that day, Ms. Green was preparing for work in her home when she was confronted by three men, one of whom had a gun. The men ordered her to take off her sleepwear and kneel in the bedroom while they ransacked her home. They told her that she would not be hurt if she cooperated. The gun was held to her head and she was taunted with the comment, "safety on, safety off." (Tr. 95.) After they collected her belongings, the intruders tied Ms. Green to a chair, with her terrycloth bathrobe ties, and put a pair of socks in her mouth. They returned several times to her, wanting to be certain that her car alarm did not go off when they took it. When the intruders left her home, Ms. Green was able to scoot the chair to a nightstand, retrieve manicure scissors, and cut the bathrobe ties to free herself. Ms. Green has a bleeding disorder, and she suffered extensive bruising as a result of being tied to the chair. The home invasion lasted approximately 45 minutes.
 {¶ 23} Mr. Reames, and his fiancÉe Ms. Pinkerton, were the victims of the October 10, 2005 home invasion. Both victims testified in the trial court. Their testimony indicated the following. On the day of the invasion, the two were awakened by their barking dogs at approximately 6 a.m. Mr. Reames got out of bed and went into the hallway, where he was confronted by a man holding a gun and another man holding a knife. One of the intruders told him to get his wife out of the bedroom. Ms. Pinkerton came out of the bedroom and the two were ordered, with a gun pointed at them, to get on their knees. The gunman demanded to know the location of any cash in the house. Eventually, the gunman sat in the hallway and talked to the victims, asking where other things were located. After the gunman was satisfied that they had everything they wanted in the house, he ordered the other intruder to go down the stairs and retrieve two chairs. Because the chairs were heavy, the man brought them upstairs one at a time. The intruders forced Mr. Reames and Ms. Pinkerton to strip naked, and the intruders tied them to the chairs with Mr. Reames' neckties. One of the intruders put a sock in Ms. Pinkerton's mouth, which made it difficult for her to breathe and swallow. The intruder eventually took it out of her mouth. The intruders left in Ms. Pinkerton's car. The home invasion lasted approximately ten minutes. Ms. Pinkerton was able to free herself first by using her teeth to untie the ties on her hands. She had to help Mr. Reames because he was tied up "really, really good." (Tr. 149.) His feet were tied so tight to the chair that they were turning blue from a lack of circulation. It took them six to seven minutes to free themselves.
 {¶ 24} The victim of the third home invasion, which occurred on October 25, 2005, was Mr. Maransky. According to Mr. Maransky's testimony, during the morning of that day, he was getting ready for work when he was confronted by two men, one of whom had a gun. He was told that if he cooperated nothing would happen. Initially, the intruders told him to lie down on the floor. The gunman moved a chair close to Mr. Maransky and pointed the gun at him, while the other man was rummaging through his things. The gunman asked Mr. Maransky about possible valuables in the home. The other man would bring things to the back door. Once it appeared that the intruders collected everything they wanted in the house, they asked Mr. Maransky about his car parked in front of the house. While one of the intruders watched Mr. Maransky, the other loaded the car with his things. When everything was loaded in the car, they told Mr. Maransky to move toward the basement of the house. Once they were in the basement, Mr. Maransky was ordered to strip naked, and lay on the floor. The intruders tied his arms together, his feet together, and then tied his feet and arms together behind him. After stuffing a glove in Mr. Maransky's mouth, the intruders left in his car. It took Mr. Maransky approximately 15 minutes to work himself loose from being "hog-tied." (Tr. 251.) Eventually, he was able to get one hand loose, get up the stairs, find a pair of scissors, and cut himself free.
 {¶ 25} Undoubtedly, the kidnappings facilitated the commission of the aggravated robberies and/or the intruders' flight from the scenes, but the kidnappings were not merely incidental to those crimes. In each invasion, the intruders robbed the victims at gunpoint, ordered them to strip naked, and physically restrained them by either tying them to chairs, or in the case of Mr. Maransky, hog-tying the victim. Ms. Green, who suffered extensive bruising as a result of being tied to a chair, was able to free herself by scooting to a nightstand and retrieving manicure scissors, which she used to cut the bathrobe ties. Ms. Pinkerton used her teeth to untie her hands and, after freeing herself, was able to assist Mr. Reames, whose feet were turning blue as a result of a lack of circulation. It took Mr. Maransky approximately 15 minutes to free himself from being hog-tied by loosening one hand, getting upstairs, retrieving scissors, and cutting himself free. Were it not for their resourcefulness, the victims would have been restrained for even longer periods of time than they were. In each situation, the restraint was prolonged, and a reasonable person could only find that each of the four kidnappings were committed with a separate animus from that which resulted in the aggravated robberies.
 {¶ 26} As to defendant's claim that the aggravated burglary counts should have merged with the underlying criminal offenses, we note that "a reply brief is merely an opportunity to reply to the brief of appellee. * * * A reply brief may not raise new assignments, which were omitted from appellant's original brief[.]" Calex Corp. v. UnitedSteelworkers of America (2000), 137 Ohio App.3d 74, 80, dismissed, appeal not allowed, 89 Ohio St.3d 1465. Nonetheless, we find the claim to be without merit.
 {¶ 27} Presumably, defendant is arguing that the aggravated burglary counts should have merged with the aggravated robbery, kidnapping, and weapon under disability counts, for purposes of sentencing. Aggravated burglary and kidnapping are not allied offenses of similar import.State v. Monroe, 105 Ohio St.3d 384, 2005-Ohio-2282, at ¶ 69. Aggravated burglary and aggravated robbery are not allied offenses of similar import. State v. Woods, Allen App. No. 1-05-82, at ¶ 7; State v.Stern (2000), 137 Ohio App.3d 110, 116. Furthermore, although our research does not reveal a case directly resolving the issue, we find that the offenses of aggravated burglary and having a weapon under disability are not allied offenses of similar import, as the elements of proof of these two crimes do not correspond to such a degree that commission of one of the offenses will necessarily result in the commission of the other. A person may have a weapon under disability and not commit aggravated burglary. Conversely, a person may commit aggravated burglary without having a weapon under disability. Therefore, the trial court properly did not merge, for purposes of sentencing, the aggravated burglary counts with the aggravated robbery, kidnapping, and weapon under disability counts.
 {¶ 28} Accordingly, we overrule defendant's third assignment of error.
 {¶ 29} Under his fourth assignment of error, defendant sets forth an argument regarding merger and the sentences imposed for the firearm specifications. Although defendant's precise argument in this assignment of error is unclear, he apparently attempts to argue that the trial court did not properly merge the firearm specifications for sentencing purposes. As to this assignment of error, the state concedes that the trial court's judgment entry erroneously stated thatthe firearm specifications on counts one, three, and five are to run consecutively, even though they relate to only one transaction. In addition, the state recognizes the trial court's improper imposition of eight three-year prison terms for the use of a firearm in the other two transactions.
 {¶ 30} R.C. 2929.14(D)(1)(b) provides the following: "A court shall not impose more than one prison term on an offender under division (D)(1)(a) of this section [governing sentencing on firearm specifications] for felonies committed as part of the same act or transaction." The Supreme Court of Ohio has defined "transaction" as a "series of continuous acts bound together by time, space and purpose, and directed toward a single objective." State v. Wills (1994),69 Ohio St.3d 690, 691 (construing former R.C. 2828.71[B], which contained language substantially similar to R.C. 2929.14[D][1][b]). Furthermore, pursuant to R.C. 2929.14(E)(1)(a), a prison sentence for a firearm specification must be served consecutively to any other prison sentence imposed upon the offender.
 {¶ 31} In this matter, the state concedes that there were only three "transactions" for purposes of R.C. 2929.14(D)(1)(b). Thus, as to the firearm specifications, the trial court could only impose one three-year term of actual incarceration for the felonies committed as part of each of the three separate transactions. Consequently, the trial court, as a matter of law, only could impose, as to the firearm specifications, a total of three three-year prison terms. However, the trial court imposed a total of 11 three-year prison terms for the use of a firearm. The state recommends that this court vacate eight of those three-year prison terms for the use of a firearm. We agree with defendant and the state that the trial court did not properly merge the firearm specifications for purposes of sentencing. Therefore, at the suggestion of the state, we hereby vacate the three-year prison sentences imposed for the firearm specifications attached to counts 3, 5, 11, 13, 14, 16, 21, and 23. Defendant is to receive a total of nine years in prison on firearm specifications, and, therefore, a total sentence of 134 years in prison.
 {¶ 32} In addition, defendant argues under his fourth assignment of error that the trial court erred in not merging the weapon under disability convictions for purposes of sentencing. We disagree with defendant. The Supreme Court of Ohio has explained that "a court need only engage in the allied-offense analysis when the same conduct, or single act, results in multiple convictions." State v. Cooper,104 Ohio St.3d 293, 296, 2004- Ohio-6553, at ¶ 17. Here, defendant was convicted on three counts of having a weapon under disability. However, those three counts arose from three separate home invasions, which occurred on different days and at different locations. Thus, the "same conduct" did not result in multiple convictions.
 {¶ 33} Accordingly, we sustain defendant's fourth assignment of error to the extent the trial court improperly imposed a sentence for more than three firearm specifications. Otherwise, defendant's fourth assignment of error is overruled.
 {¶ 34} Under his fifth assignment of error, defendant asserts thatFoster violates the Ex Post Facto and Due Process Clauses of the United States Constitution.[3] Defendant argues that the Foster court's severance of the unconstitutional statutes operates retrospectively and disadvantages him. As noted by the state, defendant did not raise this argument in the trial court. Therefore, defendant has waived all but plain error as to this issue. See, e.g., State v. Alexander, Franklin App. No. 06AP-501, 2006-Ohio-6375.
 {¶ 35} A basic premise of defendant's fifth assignment of error is that he pled guilty before Foster was released. Defendant is simply mistaken in that regard, as Foster was released on February 27, 2006, and defendant pled guilty on March 31, 2006. Nonetheless, this court, as well as other intermediate appellate courts in Ohio, has determined that application of Foster to defendants who committed their offenses before that decision was released does not violate constitutional principles of due process or operate as an ex post facto law. See State v.Gibson, Franklin App. No. 06AP-509, 2006- Ohio-6899 (concluding that the remedial holding of Foster did not violate the appellant's due process rights, or the ex post facto principles contained therein);Alexander, supra, at ¶ 8 ("Thus, at the time that [the] appellant committed his crimes the law did not afford him an irrebuttable presumption of minimum and concurrent sentences. As such,Foster does not violate [the] appellant's right to due process and does not operate as an ex post facto law."); State v. McGhee, Shelby App. No. 17-06-05, 2006-Ohio-5162 (finding that Foster does not violate the Ex Post Facto Clause of the United States Constitution or federal notions of due process); State v. Grimes, Washington App. No. 04CA17,2006-Ohio-6360 (agreeing with the McGhee court's reasoning).
 {¶ 36} Accordingly, defendant's fifth assignment of error is without merit and is overruled.
 {¶ 37} Defendant alleges in his sixth assignment of error that the 134-year aggregate prison sentence imposed upon him constitutes cruel and unusual punishment. The state argues that defendant's claim of cruel and unusual punishment fails because he received multiple proportionate sentences.
 {¶ 38} Both the Eighth Amendment to the Constitution of the United States and Section 9, Article I of the Ohio Constitution provide: "Excessive bail shall not be required; nor excessive fines imposed; nor cruel and unusual punishments inflicted." The Supreme Court of Ohio has stated that "`cases in which cruel and unusual punishments have been found are limited to those involving sanctions which under the circumstances would be considered shocking to any reasonable person.'"State v. Weitbrecht (1999), 86 Ohio St.3d 368, 371, quoting McDougle v.Maxwell (1964), 1 Ohio St.2d 68, 70. In addition, "`the penalty must be so greatly disproportionate to the offense as to shock the sense of justice of the community.'" Weitbrecht, at 371, quotingMcDougle, at 70. "The gross disproportionality principle reserves a constitutional violation for only the extraordinary case." Lockyer v.Andrade (2003), 538 U.S. 63, 77, 123 S.Ct. 1166. Furthermore, "Eighth Amendment analysis focuses on the sentence imposed for each specific crime, not on the cumulative sentence." United States v. Aiello (C.A.2 1988), 864 F.2d 257, 265. "[E]very sentence * * * must be treated separately, not cumulatively, for purposes of determining whether it is cruel and unusual." Pearson v. Ramos (C.A.7 2001), 237 F.3d 881, 886.
 {¶ 39} In this appeal, defendant does not attack any particular sentence he received for any specific offense. Instead, defendant is contesting his aggregate sentence of 134 years in prison. In this regard, defendant erroneously asserts that he was sentenced to 134 years in prison "for a crime." (Emphasis added.) (See defendant's brief in support of supplemental assignments of error.) Contrary to defendant's assertion, he was sentenced for multiple offenses, and the sentences for those offenses cumulatively totaled 134 years in prison. See State v.Saxon, 109 Ohio St.3d 176, 2006- Ohio-1245, at paragraph one of the syllabus ("A sentence is the sanction or combination of sanctions imposed for each separate, individual offense."). Specifically, defendant was sentenced to maximum, consecutive sentences for his 11 first-degree felonies and three third-degree felonies, in addition to nine years in prison for three firearm specifications (in view of this court's modification of the trial court's judgment). Thus, the severity of the aggregate sentence was, in part, a result of the number of crimes defendant committed. However, it was not the result of the imposition of one or more grossly disproportionate sentences.
 {¶ 40} Based on the foregoing, we find that defendant's multiple-offense sentence did not violate the Eighth Amendment to the United States Constitution or Section 9, Article I of the Ohio Constitution. Accordingly, we overrule defendant's sixth assignment of error.
 {¶ 41} In sum, we overrule defendant's first, second, third, fifth, and sixth assignments of error. We sustain in part, and overrule in part, defendant's fourth assignment of error. Because the trial court improperly imposed too many three-year firearm specification prison terms, we vacate the three-year prison sentences imposed for the firearm specifications attached to counts 3, 5, 11, 13, 14, 16, 21, and 23. Defendant is to receive a total sentence of nine years in prison on firearm specifications, and, in view of the maximum, consecutive sentences that were imposed by the trial court for his crimes, a total sentence of 134 years in prison. Accordingly, the judgment of the Franklin County Court of Common Pleas is affirmed as modified.
Judgment affirmed as modified.
 KLATT and TRAVIS, JJ., concur.
[1] Defendant's co-defendants were also charged with criminal offenses in the same indictment, but they are not parties in this appeal.
[2] In his original brief, defendant set forth four assignments of error. Defendant subsequently filed a motion for leave to file supplemental assignments of error, numbered five and six. This court granted the request.
[3] We note that, in response to the Foster decision, the defendant-appellant, Andrew Foster, timely filed a motion for reconsideration, arguing that the severance remedy applied inFoster violated the Ex Post Facto and Due Process Clauses of the United States Constitution. The Supreme Court of Ohio denied the motion without setting forth the reason(s) for the denial. See 109 Ohio St.3d 1408,2006-Ohio-1703.