OPINION
{¶ 1} Defendant-appellant, Perry R. Silverman, pro se, appeals from the judgment of the Franklin County Court of Common Pleas denying his petition for postconviction relief brought pursuant to R.C. 2953.21.
 {¶ 2} By three separate indictments, appellant was charged with 18 felony counts — one count of tampering with records, two counts of tampering with evidence, one count of falsification, one count of forgery, 12 counts of theft, and one count of engaging in a pattern of corrupt activity. All charges arose from alleged criminal activity *Page 2 
committed by appellant while engaged in his solo law practice operated through Perry L. Silverman Co., L.P.A.
 {¶ 3} Appellant retained private counsel. Upon the prosecution's motion, the trial court consolidated the cases into one trial. Appellant elected to try the matter before the trial court and waived his right to jury trial. During the second day of the prosecution's case, discord between appellant and his trial counsel surfaced, and appellant obtained the court's approval to terminate counsel's representation and assume his own defense. Counsel remained in attendance in a standby capacity until the fifth day of trial, when appellant, with the court's approval, waived counsel's continued presence. Counsel did not attend the balance of the trial.
 {¶ 4} At the conclusion of the prosecution's case, the trial court dismissed two of the theft counts pursuant to Crim.R. 29. Thereafter, the trial court found appellant guilty of the remaining 16 counts in the indictment. Appellant retained new counsel to represent him at sentencing. At the conclusion of the sentencing hearing, the trial court sentenced appellant to a total of 18 years imprisonment, imposed a total of $150,000 in fines, and ordered appellant to pay restitution to his client-victims. The trial court included in its order of restitution the attorney fees and out-of-pocket expense reimbursements appellant's client-victims would have owed appellant under their written fee agreements.
 {¶ 5} Appellant filed a notice of appeal from the judgment of conviction. On the same day, he filed a motion for new trial claiming ineffective assistance of trial counsel. In support of his motion, appellant attached his own affidavit asserting that trial counsel failed to interview certain defense witnesses as requested by appellant, failed to examine pertinent documents provided by appellant, failed to adequately prepare a defense *Page 3 
strategy for trial, failed to sufficiently investigate prosecution witnesses Bruce Gurwin and Heather Rodgers, appellant's former employees upon whom he attempted to cast blame for the offenses, failed to provide the prosecution complete discovery, failed to adequately cross-examine several of the prosecution's witnesses, failed to call appellant's recommended handwriting expert as a witness, and improperly stipulated that copies of checks and other documents could be substituted for the originals at trial. Appellant posited that trial counsel's involvement with various death penalty cases, or his frustration at appellant's failure to accept the prosecution's plea offers, or both, may have contributed to trial counsel's failure to prepare an adequate defense.
 {¶ 6} The trial court denied the motion for new trial, finding that appellant had failed to demonstrate trial counsel's ineffectiveness and/or how appellant was prejudiced by the alleged ineffectiveness. Appellant did not appeal the trial court's judgment denying his motion for new trial.
 {¶ 7} During the pendency of his direct appeal, appellant filed in the trial court a pro se petition for postconviction relief pursuant to R.C.2953.21 and requested an evidentiary hearing. Appellant supported his petition with his own affidavit. He first claimed ineffective assistance of trial counsel on essentially the same grounds as those asserted in his motion for new trial; he supplemented his claim that trial counsel did not interview potential defense witnesses by providing the names of those witnesses and the alleged testimony to be offered by such witnesses. Appellant claimed counsel's ineffectiveness deprived him of his right to counsel under the Sixth Amendment to the United States Constitution. *Page 4 
 {¶ 8} Appellant next claimed the trial court's order of restitution disgorging legal fees and reimbursement for out-of-pocket expenses otherwise owed by appellant's client-victims deprived him of his property without due process of law in violation of the Fifth andFourteenth Amendments to the United States Constitution and Section 16, Article 1, of the Ohio Constitution. Appellant's third, fourth, and fifth claims asserted his 18-year sentence and concomitant ineligibility for judicial release under R.C. 2929.20 deprived him of equal protection of the law in violation of the Fourteenth Amendment to the United States Constitution and Section 2, Article 1, of the Ohio Constitution, constituted cruel and unusual punishment in violation of the Eighth andFourteenth Amendments to the United States Constitution and Section 9, Article 1, of the Ohio Constitution, and deprived him of his liberty without due process of law in violation of the Fifth andFourteenth Amendments to the United States Constitution and Section 16, Article 1, of the Ohio Constitution, respectively.
 {¶ 9} Subsequently, appellant filed a motion for summary judgment. Appellant thereafter filed a supplemental memorandum in support of the petition and motion for summary judgment, along with a supplemental affidavit. Therein, appellant reiterated that trial counsel was ineffective in failing to prepare a defense, in failing to acquire the services of the handwriting expert appellant recommended, and in failing to provide that expert with original handwriting exemplars. Appellant further asserted that trial counsel's file, which appellant purportedly did not receive until after the time for filing a motion for new trial had expired, included a letter drafted on trial counsel's letterhead on June 13, 2005, a week prior to the commencement of trial, which, according to appellant, demonstrated that counsel was having such difficulty competently representing appellant *Page 5 
that he should have withdrawn as counsel. Appellant attached a copy of the letter to his affidavit.
 {¶ 10} On July 27, 2006, this court affirmed appellant's convictions and sentences. State v. Silverman, Franklin App. No. 05AP-837,2006-Ohio-3826. ("Silverman I"). The Supreme Court of Ohio accepted appellant's further appeal and affirmed in Proposition of Law No. 1.State v. Silverman, 112 Ohio St.3d 1418, 2006-Ohio-2552 ("SilvermanII").
 {¶ 11} Thereafter, appellant moved for leave to file an amended petition for postconviction relief in order to add three new claims: (1) ineffective assistance of counsel who represented him at the sentencing hearing; (2) unconstitutionality of R.C. 2929.20, and (3) the non-minimum and consecutive sentences imposed upon him are unconstitutional and void under the Sixth Amendment to the United States Constitution pursuant to the Supreme Court of Ohio's decision inState v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856. Appellant also filed a second supplemental memorandum in support of his petition, along with a second supplemental affidavit. In this affidavit, appellant reiterated his assertions regarding trial counsel's alleged ineffectiveness and averred that sentencing counsel was ineffective in failing to argue the statutes utilized by the trial court to justify non-minimum and consecutive sentences were unconstitutional and therefore void underApprendi v. New Jersey (2000), 530 U.S. 466, 120 S.Ct. 2348, andBlakely v. Washington (2004), 542 U.S. 296, 124 S.Ct. 2531.
 {¶ 12} The trial court granted, in part, appellant's motion for leave to file his amended petition. The court rejected appellant's request to add claims pertaining to the alleged ineffective assistance of sentencing counsel and the trial court's alleged imposition of "void" sentences under Foster. The court granted appellant leave to amend *Page 6 
his petition as to his claim regarding the alleged unconstitutionality of R.C. 2929.20. Thereafter, appellant filed his amended petition for postconviction relief incorporating that claim; he also filed a second motion for summary judgment. The trial court subsequently granted appellant's motion for leave to file a second amended petition for postconviction relief in order to reassert his Foster claim.
 {¶ 13} By entry filed November 29, 2006, the trial court granted the state's motion to dismiss without conducting an evidentiary hearing and denied appellant's motions for summary judgment. The trial court determined that all of appellant's claims were either barred by res judicata, having been raised either in his motion for new trial or on direct appeal, or failed to state operative facts giving rise to the need for an evidentiary hearing.
 {¶ 14} Appellant timely appeals the trial court's judgment, advancing the following four assignments of error:
 1. The court below erred to the appellant's prejudice by holding that his right to a fair trial under the Sixth Amendment to the United States Constitution was not prejudiced by the ineffective assistance of counsel.
 2. The court below erred to the appellant's prejudice by holding that its sentencing orders did not violate his right to due process of law under the Fourteenth Amendment to the United States Constitution.
 3. The court below erred to the appellant's prejudice by holding that its sentencing orders did not impose cruel and unusual punishment upon him as prohibited by the Eighth Amendment to the United States Constitution.
 4. The court below erred to the prejudice of the appellant by holding that R.C. 2929.20 did not violate his right to equal protection of the law under the Fourteenth Amendment to the United States Constitution. *Page 7 
 {¶ 15} Appellant's assignments of error collectively challenge the trial court's denial of his postconviction relief petition; accordingly, we will consider them together. A postconviction relief petition is a statutory vehicle designed to rectify the violation of a convicted defendant's constitutional rights. State v. Murphy (Dec. 26, 2000), Franklin App. No. 00AP-233. "State collateral review itself is not a constitutional right." State v. Calhoun (1999), 86 Ohio St.3d 279, 281, citing State v. Steffen (1994), 70 Ohio St.3d 399, 410. Although designed to address claimed constitutional violations, the postconviction relief process is a civil collateral attack on a criminal judgment, not an appeal of that judgment. Calhoun, supra, citingSteffen, supra.
 {¶ 16} When a criminal defendant files a petition for postconviction relief under R.C. 2953.21, the trial court must grant a hearing unless the court determines that the petition and the files and records of the case demonstrate the petitioner is not entitled to relief. R.C.2953.21(E). "[A] criminal defendant seeking to challenge his conviction through a petition for postconviction relief is not automatically entitled to an evidentiary hearing." Calhoun, supra, at 282, citingState v. Cole (1982), 2 Ohio St.3d 112. In determining whether to grant a hearing, the trial court must consider the petition, supporting affidavits and other documentary evidence, files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, journal entries, clerk's records and transcripts of proceedings. State v. Holoman, Franklin App. No. 06AP-608,2006-Ohio-6789, at ¶ 6, citing R.C. 2953.21(C) and State v. Combs
(1994), 100 Ohio App.3d 90, 97. To warrant an evidentiary hearing on a postconviction relief petition, a petitioner must first present evidence demonstrating substantive grounds for relief. Holloman, at ¶ 5, citingState v. Hessler, Franklin App. No. 01AP-1011, 2002-Ohio-3321, *Page 8 
at ¶ 32. That evidence must demonstrate that "there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States." Calhoun, supra, at 282. If the petitioner does not submit evidentiary materials which facially demonstrate a constitutional violation, the court may deny the petition without a hearing.Holloman, supra.
 {¶ 17} An appellate court applies an abuse of discretion standard when reviewing a trial court's denial of a petition for postconviction relief without a hearing. Holloman, at ¶ 7. "The term `abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."State v. Adams (1980), 62 Ohio St.2d 151, 157.
 {¶ 18} Further, a trial court may dismiss a petition for postconviction relief without a hearing when the doctrine of res judicata bars the claims raised in the petition. "Res judicata is applicable in all postconviction relief proceedings." State v.Szefcyk (1996), 77 Ohio St.3d 93, 95. "Under the doctrine of resjudicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment. Id. at syllabus, approving and following State v. Perry (1967), 10 Ohio St.2d 175, paragraph nine of the syllabus. To avoid dismissal under res judicata, the evidence supporting the claims in the petition not only must be competent, relevant, and material evidence outside the trial record, but must have been non-existent or unavailable for use at the time of trial. *Page 9 State v. Braden, Franklin App. No. 02AP-954, 2003-Ohio-2949, at ¶ 27, citing State v. Lawson (1995), 103 Ohio App.3d 307, 315.
 {¶ 19} Appellant's first assignment of error asserts the trial court erred in denying his claim for relief as to ineffective assistance of counsel. The standard governing claims of ineffective assistance of counsel under both the United States and Ohio Constitutions is well-established. When a convicted defendant alleges that he or she has received ineffective representation, the defendant must demonstrate: (1) that counsel's performance was so deficient that he or she was not functioning as the counsel guaranteed by the Sixth Amendment to the United States Constitution; and (2) that counsel's deficient performance so prejudiced the defendant that he or she was deprived of a fair trial, a trial whose result is reliable. Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052; State v. Bradley (1989), 42 Ohio St.3d 136. In the context of a postconviction proceeding, "the defendant, in order to secure a hearing on his petition, must proffer evidence which, if believed, would establish not only that his trial counsel had substantially violated at least one of a defense attorney's essential duties to his client but also that said violation was prejudicial to the defendant." Cole, supra, at 114, citing State v. Jackson (1980),64 Ohio St.3d 107, 110. A postconviction relief petitioner has the burden of proving counsel's ineffectiveness, since in Ohio a properly licensed attorney is presumed to be competent. Calhoun, supra, at 289.
 {¶ 20} Appellant's ineffective assistance claims are barred by res judicata. Appellant essentially claims that trial counsel failed to effectively investigate and prepare the case for trial. As found by the trial court in its entry denying postconviction relief, appellant raised these claims in both his motion for new trial and on direct appeal. *Page 10 
Indeed, in its journal entry denying appellant's motion for new trial, the court discussed at length appellant's claims, including appellant's affidavit in support of those claims. The court rejected each of appellant's arguments. On appeal, this court determined, inter alia, that: (1) trial counsel legitimately chose not to extensively cross-examine the state's initial witnesses; (2) trial counsel's decision not to conduct appellant's requested interviews would not have affected the outcome of the trial; (3) trial counsel's decision not to provide discovery resulted in no prejudice to appellant; and 4) appellant's handwriting expert's non-review of the original documents was due to appellant's failure to request the originals either before or during the expert's testimony. Silverman I, supra, at ¶ 146-156.
 {¶ 21} Further, to the extent appellant submitted additional evidence and asserted additional arguments in his amended petition that were not considered either by the trial court in ruling on his motion for new trial or by this court in his direct appeal, such evidence and arguments do not overcome the bar of res judicata. Res judicata implicitly bars a petitioner from "re-packaging" evidence or issues which either were, or could have been, raised in the context of the petitioner's trial or direct appeal. Murphy, supra, citing Lawson, supra. Thus, it is immaterial for res judicata purposes that the arguments are more finely honed in the amended petition or that the supplemental affidavits in support thereof are more detailed than the affidavit submitted in support of the motion for new trial. The supplemental evidence could have been included with the new trial motion, and the supplemental arguments could have been raised on direct appeal.
 {¶ 22} Moreover, even if appellant's ineffective assistance claims are not barred by res judicata, the evidence submitted by appellant in support of his petition, i.e., his own self-serving affidavits and the June 13, 2005 letter from trial counsel, does not provide *Page 11 
substantive grounds for relief. As to appellant's affidavits, we note initially that as a general matter, "evidence outside the record in the form of petitioner's own self-serving affidavit alleging constitutional deprivation will not compel a hearing." Holloman, supra, at ¶ 9, citingState v. Kapper (1983), 5 Ohio St.3d 36, 37-38.
 {¶ 23} Further, a trial court in postconviction proceedings need not accept affidavit testimony as true. "In reviewing a petition for postconviction relief filed pursuant to R.C. 2953.21, a trial court should give due deference to affidavits sworn to under oath and filed in support of the petition, but may, in the sound exercise of discretion, judge the credibility of the affidavits in determining whether to accept the affidavits as true statements of fact." Calhoun, supra, paragraph one of the syllabus. As such, a trial court may, under appropriate circumstances in postconviction relief proceedings, find affidavit testimony incredible without first observing or examining the affiant. Id. at 284, citing Cole, supra, at 114.
 {¶ 24} Among the factors a trial court should consider in assessing the credibility of supporting affidavits in postconviction relief proceedings are: "(1) whether the judge reviewing the postconviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial." Calhoun, supra, at 285. "Depending on the entire record, one or more of these or other factors may be sufficient to justify the conclusion that an affidavit asserting information outside the record lacks credibility." Id. A trial court's decision *Page 12 
regarding the credibility of affidavit testimony is reviewed under an abuse of discretion standard. Id.
 {¶ 25} Appellant contends in his affidavits that he asked trial counsel to interview various individuals, including his former secretary Deri Adair, his wife, Ruth Silverman, his accountant, Ellen Vosler, James and Venita Moorer, Marcia Gold, Rick Brunner, Richard H. Glazer, his psychologist, Randi Cohen, Ph.D., and handwriting expert, Ray Fraley, but that counsel failed to make any substantial investigation into his request. Appellant asserts that Adair, Silverman, both Moorers, Gold, Brunner, and Vosler could have testified as defense witnesses at trial to various facts corroborating his claim that Gurwin and Rodgers actually committed the offenses, that Dr. Cohen could have testified that he was distracted from his law practice during the time his clients' funds were misappropriated because he was being treated for depression and emotional distress, that Glazer could have testified as a character witness regarding appellant's impeccable reputation in the legal community, and that Fraley could have testified that the signatures on documents at issue in the case were not those of appellant. Appellant's affidavit also contends that trial counsel's investigator's pre-trial interviews of Gurwin and Rodgers were ineffective in that the investigator did not ask appellant's suggested questions and that trial counsel was ineffective in stipulating to copies, rather than originals, of certain bank documents for purposes of handwriting analysis.
 {¶ 26} We find the trial court did not abuse its discretion in dismissing the credibility of appellant's affidavit. The judge who reviewed appellant's postconviction relief petition presided at appellant's trial. As such, the judge was familiar with the underlying proceedings and was in the best position to observe appellant and assess his credibility. *Page 13 
Id. at 286-287, citing State v. Moore (1994), 99 Ohio App.3d 748, 754. In addition, appellant's affidavits are based in part on statements allegedly made by appellant's trial counsel; thus, they contain and rely on hearsay. Calhoun, supra.
 {¶ 27} Further, appellant's affidavits fail to specify what questions trial counsel's investigator should have asked Gurwin and Rodgers or what the responses to those questions would have been. In addition, the record does not include an affidavit from trial counsel, the investigator, or any other non-interested party with personal knowledge of what steps trial counsel took in preparing appellant's case for trial. See State v. Woods (Nov. 29, 2001), Cuyahoga App. No. 79638 (court acted within its discretion in discounting self-serving affidavit of petitioner asserting his counsel was made aware of witness in a timely manner where affidavit lacks a corroborating affidavit by trial counsel). In addition, appellant did not submit affidavits from any of the potential witnesses corroborating the statements set forth in appellant's affidavit. See State v. Towler, Franklin App. No. 05AP-387,2006-Ohio-2441, at ¶ 17.
 {¶ 28} Further, decisions as to what stipulations should have been made, what evidence was to be introduced, including what witnesses to interview, and what objections should be made are within the purview of defense counsel's trial strategy and tactics. State v. Cline, Franklin App. No. 05AP-869, 2006-Ohio-4782, at ¶ 22. "`[Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" Id., quoting Wiggins v.Smith (2003), 539 U.S. 510, 123 S.Ct. 2527, quoting Strickland, supra, at 690-691.
 {¶ 29} Moreover, even assuming appellant could demonstrate that trial counsel's performance was deficient, appellant has not demonstrated prejudice. As noted, appellant *Page 14 
assumed his own defense midway through the prosecution's presentation of its case. As noted by the trial court, appellant knew the key role Gurwin and Rodgers played in supporting the prosecution's allegations and, thus, was well aware that mounting an effective cross-examination of those two witnesses would be crucial to his defense. In addition, appellant was wholly in charge of the presentation of his defense case; accordingly, he alone determined which witnesses to call and what questions to ask. Thus, appellant's decision not to call Venita Moorer, Vosler, and Cohen rests squarely on his shoulders. Further, Adair, James Moorer, Gold, Silverman, Brunner and Fraley testified at trial; it was thus incumbent upon appellant to ensure that those witnesses were effective, including production of original bank documents for Fraley's review.
 {¶ 30} Moreover, many of the statements in appellant's affidavit do not substantially differ from, and are cumulative of, testimony presented at trial. Further, to the extent there may be inconsistencies between the trial testimony and appellant's affidavit statements, the affidavit does not present evidence sufficient to create a reasonable probability that the trial court would have reached a different result. Indeed, in the present case, the trial court noted that the record consisted almost exclusively of appellant's "own repetitive affidavits" and that it had "fully considered petitioner's credibility — and found it severely lacking — based upon all the evidence submitted in that extended bench trial." The trial court heard the witnesses' testimony at trial and determined that appellant's affidavits provided nothing to disturb its determination that the evidence against appellant at trial outweighed the evidence in his favor.
 {¶ 31} Appellant also contends that trial counsel's "own files" demonstrate that he "gave up" on defending appellant before trial. Although appellant does not expressly so *Page 15 
state, we presume he is referring to the unsigned June 13, 2005 letter from trial counsel to appellant. Contrary to appellant's contention, the letter actually bolsters the presumption that trial counsel effectively represented appellant. In the letter, trial counsel explained that he worked "diligently on [appellant's] case" by reviewing all the documents, interviewing witnesses, and researching legal issues. Trial counsel also asserted the evidence of appellant's guilt was overwhelming, that he would "most certainly" be convicted of most, if not all, of the charges against him, and that appellant did not have a viable defense. Trial counsel further stated that despite his recommendation that appellant accept the plea deal offered by the prosecution, appellant had "every right" to insist on a trial and assured him that he would "do [his] best to represent [him]."
 {¶ 32} Finally, we address appellant's challenges to particular findings made by the trial court in denying his petition. First, relying on Griffin v. California (1965), 380 U.S. 609, 85 S.Ct. 1229, appellant claims the trial court improperly drew negative inferences regarding the credibility of his affidavit from his decision not to testify at trial. Appellant misconstrues the trial court's finding. The trial court discounted the credibility of appellant's affidavits based upon the extensive evidence against appellant presented at trial, not because he chose not to testify. Moreover, the court found the credibility of appellant's affidavits to be undermined in other ways. For example, the court noted that appellant's affidavit statements about trial counsel's alleged lack of preparation "diverge[d] sharply" from the factual record. In particular, the court noted significant discrepancies concerning when appellant retained trial counsel (the affidavit states February 2005; the fee agreement is dated March 28, 2005) and when he and trial counsel met to discuss witnesses (the affidavit states July 2005; trial ended in late June 2005). *Page 16 
 {¶ 33} Appellant also complains the trial court improperly referenced trial counsel's fee bill filed with the clerk of court in support of its finding that trial counsel was effective in representing appellant. As noted, R.C. 2953.21(C) requires a trial court to examine "all the files and records pertaining to the proceedings against the petitioner * * * including the journalized records of the clerk of the court" in determining whether the petitioner has set forth substantive grounds for relief. Such an examination includes trial counsel's time-stamped fee bill. Further, the trial court expressly noted that trial counsel's summary of work presented in the fee statement was merely one of the items it considered in ruling on appellant's petition. Indeed, the trial court's entry denying appellant's petition reveals that the trial court painstakingly reviewed appellant's petitions, supporting affidavits, documentary evidence and other files and records pertaining to the postconviction relief proceeding. The first assignment of error is not well-taken.
 {¶ 34} Appellant's second assignment of error asserts the trial court erred in denying his due process claim for relief based uponFoster, supra. Appellant claims that pursuant to Foster he is entitled to be resentenced to minimum, concurrent prison terms. InFoster, the Supreme Court of Ohio, following Blakely, supra, found unconstitutional portions of Ohio's felony sentencing scheme requiring judicial fact-finding before imposing non-minimum, maximum, and consecutive prison terms. Id. at paragraphs one and three of the syllabus. As its remedy, the Foster court severed the unconstitutional statutes from Ohio's felony sentencing laws. Id. at ¶ 99. The court then concluded that cases pending on direct review "must be remanded to the trial courts for new sentencing hearings." Id. at ¶ 104. *Page 17 
 {¶ 35} Although appellant was sentenced after Blakely was decided, he raised no Blakely objection in the trial court. He did, however, assert a Blakely argument in his direct appeal to this court. While that appeal was pending, the Supreme Court of Ohio decided Foster. This court ultimately concluded that appellant was not entitled to relief under either Blakely or Foster because he failed to preserve the issue for appeal. Silverman I, supra, at ¶ 136-141. The Supreme Court of Ohio accepted appellant's appeal on the narrow issue of whether appellant's failure to raise a Blakely objection at his post-Blakely sentencing hearing waived or forfeited any right to a resentencing hearing underFoster. The court stayed the briefing schedule and held the matter for decision in State v. Payne, Franklin App. No. 05AP-517, 2006-Ohio-2552.Silverman II.
 {¶ 36} Appellant's Foster claim does not rely on evidence outside the record and asserts nothing that was not nor could not have been raised in the trial court or on direct appeal. Szefcyk, supra. Thus, his claim is barred by res judicata. Contrary to appellant's assertion, it is immaterial for res judicata purposes that Foster was decided after appellant's sentencing hearing. On direct appeal, this court fully considered the impact of Foster on his Blakely claim and concluded thatFoster did not excuse appellant's failure to raise an appropriate objection at sentencing. Silverman I, supra.
 {¶ 37} Moreover, assuming arguendo res judicata does not bar appellant's claim, appellant has failed to establish a constitutional violation. In State v. Payne, 114 Ohio St.3d 502, 2007-Ohio-4642, the Supreme Court of Ohio held that "a lack of an objection in the trial court forfeits the Blakely issue for purposes of appeal when the sentencing occurred after the announcement of Blakely." Id. at ¶ 30-31. Thus, appellant is not entitled to a Foster resentencing hearing due to his failure to object at his post-Blakely *Page 18 
sentencing hearing. Further, even if he were to be resentenced, he would not be entitled to non-minimum, concurrent sentences. In Payne, the court stated that Foster "did not adopt [the] proposed remedy of mandatory non-minimum sentences. Since Foster, trial courts no longer must navigate a series of criteria that dictate the sentence and ignore judicial discretion." Id. at ¶ 25. Accordingly, "nothing in the record would hinder the trial court from considering the same factors it previously had been required to consider and imposing the same sentence or even a more stringent one." Id. at ¶ 26. The second assignment of error is not well-taken.
 {¶ 38} In his third and fourth assignments of error, appellant maintains his 18-year prison sentence and concomitant ineligibility for judicial release under R.C. 2929.20 constitutes cruel and unusual punishment and deprives him of equal protection of the law, respectfully.
 {¶ 39} R.C. 2929.20 permits a trial court to reduce a felony prison sentence only under certain circumstances. State v. Coursey, Franklin App. No. 06AP-1295, 2007-Ohio-4412, at ¶ 6. "To be eligible for judicial release under R.C. 2929.20, a defendant must be an "eligible offender." Id. R.C. 2929.20(A) defines an "eligible offender" as "any person serving a stated prison term of ten years or less" when either (1) "[t]he stated prison term does not include a mandatory prison term," or (2) "[t]he stated prison term includes a mandatory prison term, and the person has served the mandatory prison term." A "stated prison term" is "the prison term, mandatory prison term, or combination of all prison terms and mandatory prison terms imposed by the sentencing court[.]" R.C. 2929.01(GG). *Page 19 
 {¶ 40} Appellant's stated prison term in this case is 18 years. Because appellant's sentence exceeds ten years, he is not an "eligible offender" for purposes of judicial release under R.C. 2929.20(A). Appellant contends that because he is ineligible for early release from prison, his 18-year sentence constitutes cruel and unusual punishment. Appellant also maintains R.C. 2929.20(A) violates equal protection by making an unconstitutional distinction between an offender with a stated prison term of less than ten years and an offender, such as himself, with a stated prison term of more than ten years.
 {¶ 41} Initially, we note that appellant's claims are foreclosed by res judicata, as both could have been raised in the trial court or on direct appeal. Szefcyk, supra. Appellant's contention that res judicata does not apply because "[j]udicial release issues arise after sentencing" is unavailing. Appellant misconstrues the nature of his own claims for relief. As noted, appellant maintains that the length of his aggregate prison term makes him ineligible for judicial release. His ineligibility for judicial release became apparent as soon as the trial court imposed the sentence at the sentencing hearing. Thus, nothing prevented appellant from challenging his ineligibility for judicial release at sentencing or on direct appeal. See State v. Spillan, Franklin App. No. 06AP-50, 2006-Ohio-4788, at ¶ 9. (res judicata applies to motions alleging improper calculation of jail-time credit).
 {¶ 42} Moreover, appellant fails to demonstrate that his ineligibility for judicial release constitutes cruel and unusual punishment. On direct appeal, this court addressed a similar Eighth Amendment claim. There, appellant asserted that his 18-year total sentence was disproportionate because he did not commit any crimes of violence against his client-victims. This court rejected that argument, concluding that the total 18-year *Page 20 
prison term was not "shocking to any reasonable person." SilvermanI, at ¶ 134, quoting State v. Weitbrecht (1999), 86 Ohio St.3d 368, 371, quoting McDougle v. Maxwell (1964), 1 Ohio St.2d 68, 70. We further held that "[t]he fact that appellant did not commit crimes of violence against his clients does not mitigate against the gravity of appellant's offenses given that appellant caused substantial financial harm to his clients, several of whom were disabled." Id. Since appellant's total 18-year prison term satisfies the Eighth Amendment, it only follows that requiring him to serve the entire prison term without eligibility for judicial release also satisfies the Eighth Amendment.
 {¶ 43} Appellant nonetheless claims that withholding judicial release eligibility from offenders serving non-mandatory prison terms exceeding ten years causes disproportionate punishments because such offenders are punished as severely as those sentenced to mandatory prison terms. Appellant does not allege that the prison term imposed upon any particular offense violates the Eighth Amendment; rather, he complains that his total non-mandatory prison term for all his offenses makes him ineligible for judicial release.
 {¶ 44} However, as this court has explained, "`Eighth Amendment analysis focuses on the sentence imposed for each specific crime, not on the cumulative sentence.'" State v. Hairston, Franklin App. No. 06AP-420, 2007-Ohio-143, ¶ 38, quoting United States v. Aiello (C.A.2, 1988), 864 F.2d 257, 265. "`[E]very sentence * * * must be treated separately, not cumulatively, for purposes of determining whether it is cruel and unusual.'" Hairston, quoting Pearson v. Ramos (C.A.7, 2001),237 F.3d 881, 886. Appellant's ineligibility for judicial release resulted from the total number of offenses for *Page 21 
which he was convicted, not from the imposition of one or more grossly disproportionate sentences. Hairston, supra, at ¶ 39.
 {¶ 45} Appellant also fails to demonstrate that his ineligibility for judicial release violates equal protection. Where neither a fundamental right nor a suspect class is involved, a legislative classification is subject to a "rational basis" level of scrutiny. Fabrey v. McDonaldPolice Dept. (1994), 70 Ohio St.3d 351, 353. A statute must be upheld if it bears a rational relationship to a legitimate governmental interest.Adamsky v. Buckeye Loc. School Dist. (1995), 73 Ohio St.3d 360, 362. A statute is presumed constitutional and will be declared invalid only if the challenging party demonstrates beyond a reasonable doubt that the statute violates a constitutional provision. Desenco, Inc. v. Akron
(1999), 84 Ohio St.3d 535, 538.
 {¶ 46} Appellant is not a member of any suspect class, and judicial-release eligibility is not a fundamental right. State v.Peoples, 102 Ohio St.3d 460, 2004-Ohio-3923, at ¶ 7. As such, judicial-release eligibility classifications in R.C. 2929.20 will survive equal protection analysis so long as they bear a rational relationship to a legitimate governmental interest. Id.
 {¶ 47} Under the rational basis standard, courts are to grant substantial deference to the predictive judgment of the General Assembly. State v. Williams (2000), 88 Ohio St.3d 513, 531, citingTurner Broadcasting Sys. v. Fed. Communications Comm. (1997),520 U.S 180,195, 117 S.Ct. 1174. "The state does not bear the burden of proving that some rational basis justifies the challenged legislation; rather, the challenger must negate every conceivable basis before an equal protection challenge will be upheld." Williams, at 531, citingHeller v. Doe (1993), 509 U.S. 312, 320, 113 S.Ct. 2637. *Page 22 
 {¶ 48} The General Assembly's decision to withhold judicial-release eligibility from offenders serving stated prison terms exceeding ten years survives rational-basis review. The overriding purposes of felony sentencing are to protect the public from future crime and to punish offenders. R.C. 2929.11(A). The General Assembly could have rationally concluded, for example, that all offenders sentenced to prison terms exceeding ten years have either engaged in conduct so serious or are so much of a recidivism risk, or both, that judicial release of any such offender would frustrate these legitimate goals.
 {¶ 49} Appellant's reliance upon Peoples, supra, is unavailing. There, the court held that the former version of R.C. 2929.20(B)(3) violated the Ohio Constitution because offenders sentenced to exactly five years were ineligible for judical release, while offenders sentenced to five years or more but less than ten years were eligible after serving five years. Important to the court's analysis was its conclusion that the class of offenders eligible for judicial release after serving five years, i.e., those sentenced to a prison term of five years or more but fewer than ten years, included offenders who had been sentenced to exactly five years. Id. at ¶ 6. The court also found significant the fact that the General Assembly withheld judicial-release eligibility from offenders sentenced to exactly five years but granted eligibility to offenders sentenced to longer prison terms within the class. Id. at ¶ 8. "[T]he legislature included prisoners like Peoples serving terms of exactly five years in the category of those eligible for early judicial release, but excluded them from ever applying for or receiving early judicial release because the law required them to serve the full five years of incarceration before being able to apply for early judicial release." (Emphasis sic.) Id. at ¶ 12. (O'Donnell, J., concurring). *Page 23 
 {¶ 50} In the instant case, no such intra-class treatment is present. The General Assembly clearly intended that offenders serving prison terms of ten years or less constitute a separate class from offenders serving prison terms exceeding ten years. Unlike the class inPeoples, all members of the "more than ten years" class, including appellant, are treated similarly — all are ineligible for judicial release. Further, the fact that appellant's class is treated differently from other classes is of no constitutional significance because the General Assembly may legitimately choose to treat offenders serving prison terms exceeding ten years more harshly than those serving prison terms of ten years or less. "`Equal protection of the law means the protection of equal laws. It does not preclude class legislation or class action provided there is a reasonable basis for such classification * * *.'" Id. at ¶ 5, citing Conley v. Shearer (1992),64 Ohio St.3d 284, 288-289, quoting Dayton v. Keys (1969),21 Ohio Misc. 105,114. The third and fourth assignments of error are not well-taken.
 {¶ 51} For the foregoing reasons, the trial court did not abuse its discretion in denying appellant's petition for postconviction relief without a hearing. Appellant's four assignments of error are thus overruled. Accordingly, the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
 KLATT and McGRATH, JJ. concur.
WHITESIDE, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 1