[Cite as *State v. Geter-Gray*, 2011-Ohio-1779.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C. A. No. 25374 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| LISA LYNETTE GETER-GRAY | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 08 12 4206 |

## DECISION AND JOURNAL ENTRY

Dated: April 13, 2011

DICKINSON, Presiding Judge.

### INTRODUCTION

{¶1} Lisa Geter-Gray beat up Stephanie Williams in a fight at Ms. Geter-Gray's house that both blamed the other for starting. A jury convicted Ms. Geter-Gray of felonious assault, and the trial court sentenced her to four years in prison. Ms. Geter-Gray has appealed, arguing that her convictions are against the manifest weight of the evidence, that the trial court incorrectly instructed the jury about self-defense, that her lawyer was ineffective, and that the trial court exercised improper discretion when it imposed her sentence. We affirm because Ms. Geter-Gray's conviction is not against the manifest weight of the evidence, the self-defense instruction was not plain error, her lawyer was not ineffective, and the trial court exercised proper discretion when it imposed Ms. Geter-Gray's sentence.

FACTS

{¶2}   On December 8, 2008, Ms. Geter-Gray and Ms. Williams met at Ms. Williams's home to talk, watch movies, drink alcohol, and use drugs.  According to Ms. Williams, Ms. Geter-Gray said that it was her birthday, so she gave Ms. Geter-Gray some of her clothes and a used computer as gifts.

{¶3}   Later in the evening, Ms. Geter-Gray invited Ms. Williams to her house to continue their activities.  Ms. Williams testified that they went into Ms. Geter-Gray's den and started drinking.  After they were done, she got up to leave.  Ms. Geter-Gray got up too and started walking in front of her, as if she was going to walk her out.  When they got to the door of the den, however, Ms. Geter-Gray locked it, turned around, pulled Ms. Williams's jacket over her head, and began hitting her in the face.  According to Ms. Williams, Ms. Geter-Gray's initial blows made her eyes bleed, causing her to lose most of her sight.  When she asked Ms. Geter-Gray why she was hitting her, Ms. Geter-Gray answered that it was "[b]ecause you got everything."

{¶4}   Ms. Williams testified that Ms. Geter-Gray hit her with an object that she assumed was a bottle, and she fell to the floor.  Ms. Geter-Gray next wrapped something around Ms. Williams's neck and began choking her, causing her to lose consciousness.  When she regained consciousness, she heard Ms. Geter-Gray screaming her name.  She saw some other people out of the corner of her eye that she thought were Ms. Geter-Gray's boyfriend and children and heard them discussing what they should do with her, whether they should take her to the hospital or dump her somewhere.  According to Ms. Williams, she waited until they carried her outside, then broke free and ran across the street to a relative's house.  She passed out when she reached the door of the relative's house, but vaguely remembered riding in an

ambulance and arriving at the hospital. She also remembered trying to tell whoever was near her what had happened. Ms. Williams testified that, as a result of Ms. Geter-Gray's attack, she had a lot of bruising, swelling, and deep cuts on her neck and face.

{¶5} Ms. Geter-Gray testified that she went to Ms. Williams's house to drink and watch a movie. She also tried to smoke marijuana that she thought she had in her purse, but couldn't find it. She, therefore, got out her crack pipe instead. Ms. Geter-Gray testified that, when she attempted to smoke the pipe, Ms. Williams started whining about her smoking in front of her. Ms. Geter-Gray explained that she regularly provided drugs to Ms. Williams because Ms. Williams did not have much money. Ms. Geter-Gray testified that, because it was her birthday, she did not want to be disturbed while she smoked. She, therefore, stopped the movie and called her boyfriend to pick her up. As she was waiting for her boyfriend to arrive, Ms. Williams asked if she could go too, and Ms. Geter-Gray eventually gave in.

{¶6} Ms. Geter-Gray testified that, when they arrived at her house, Ms. Williams and she went to the den. Ms. Geter-Gray explained that she locked the door behind them so Ms. Williams would not wander around the house. Ms. Geter-Gray testified that, after they had a shot, she took out her crack pipe again and started to take a hit. Ms. Williams, however, started complaining and asking if Ms. Geter-Gray could take her somewhere so that she could trade prescription pills for crack. Ms. Geter-Gray testified that Ms. Williams's conduct was rude, explaining that "[y]ou're not supposed to interrupt nobody when their elbow is bent." Ms. Geter-Gray stood up to leave, but then Ms. Williams "snapped," grabbed a bottle, and swung it at her. Ms. Geter-Gray dodged the bottle, grabbed one of her own, and hit Ms. Williams with it. Ms. Williams grabbed an extension cord and started twirling it around like a lasso, but Ms.

Geter-Gray caught the end of it, which caused the rest to wind around Ms. Williams's neck. Ms. Geter-Gray testified that they fought for a couple more minutes until Ms. Williams gave up.

{¶7} According to Ms. Geter-Gray, after the fight ended, Ms. Williams continued verbally harassing her. Ms. Geter-Gray asked her boyfriend to call her children to the house. When her children arrived, they discussed calling an ambulance for Ms. Williams. When Ms. Williams heard them talking about paramedics, however, she slumped over and played dead. Ms. Geter-Gray repeatedly called Ms. Williams's name, but Ms. Williams acted like she could not hear. Ms. Geter-Gray eventually ordered Ms. Williams to stand up, which Ms. Williams did. She then ran outside. According to Ms. Geter-Gray, her daughter called 911 while her boyfriend and she looked for Ms. Williams. Her boyfriend spotted Ms. Williams lying on the ground across the street, and he directed the paramedics to her when they arrived.

## MANIFEST WEIGHT

{¶8} Ms. Geter-Gray's first assignment of error is that her conviction is against the manifest weight of the evidence. If a defendant argues that her conviction is against the manifest weight of the evidence, this Court "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App. 3d 339, 340 (1986).

{¶9} A jury convicted Ms. Geter-Gray of felonious assault under Section 2903.11(A)(1) of the Ohio Revised Code. Under Section 2903.11(A)(1), "[n]o person shall knowingly . . . [c]ause serious physical harm to another . . . ." Ms. Geter-Gray has argued that the jury should have found that she acted in self-defense. "Self-defense is an affirmative defense

that requires a defendant to prove three elements by a preponderance of the evidence: '(1) the defendant was not at fault in creating the violent situation, (2) the defendant had a bona fide belief that she was in imminent danger of death or great bodily harm and that her only means of escape was the use of force, and (3) that the defendant did not violate any duty to retreat or avoid the danger.'" *State v. Goff*, 128 Ohio St. 3d 169, 2010-Ohio-6317, at ¶36 (quoting *State v. Thomas*, 77 Ohio St. 3d 323, 326 (1997)). "The defendant is privileged to use that force which is reasonably necessary to repel the attack." *State v. Williford*, 49 Ohio St. 3d 247, 249 (1990).

{¶10} Ms. Geter-Gray has noted that, although her children did not see the fight, they corroborated that Ms. Williams was awake and alert after the fight. Her daughter further corroborated that Ms. Williams verbally harassed her after the fight and that Ms. Williams "play[ed] . . . possum" while she called 911. Her daughter also refuted Ms. Williams's story that they carried her out of the house.

{¶11} Ms. Geter-Gray has also argued that Ms. Williams's testimony was inconsistent with what she told medical professionals the day of the fight. Ms. Geter-Gray has noted that Ms. Williams told a paramedic that she had had two beers, but testified at trial that she does not drink beer. Ms. Williams told a nurse that Ms. Geter-Gray threw alcohol in her face, but did not repeat that at trial. Ms. Williams also did not tell the nurse that she had used any alcohol or drugs the night of the fight. Ms. Williams further told a paramedic that "they" "held her all night," but testified at trial that it was only Ms. Geter-Gray who restrained her.

{¶12} The jury was entitled to reject the testimony of Ms. Geter-Gray's children, who were not impartial witnesses. Ms. Geter-Gray also undermined her own credibility by admitting that she had smoked crack the morning she gave her testimony, and that she has a bad memory. According to Ms. Geter-Gray, "I could say that I'm [going to go] to the store and then at five

minutes later, I say what did I just say because my memory does what it wants to do." In addition, there were some inconsistencies in her testimony. Although Ms. Geter-Gray testified that Ms. Williams used a bottle during the fight, she did not tell that to police. She also testified that her boyfriend had called her children to come over, while both of her children testified that it was Ms. Geter-Gray who had called them. Furthermore, Ms. Geter-Gray admitted that she was annoyed with Ms. Williams for repeatedly interrupting her crack use. Accordingly, although there were some minor inconsistencies in what Ms. Williams told the paramedic, the nurse, and the jury, they do not convince us that the jury lost its way in finding that Ms. Geter-Gray failed to establish that she acted in self-defense. Ms. Geter-Gray's first assignment of error is overruled.

## SELF-DEFENSE INSTRUCTION

{¶13} Ms. Geter-Gray's second assignment of error is that the trial court gave the jury confusing instructions regarding self-defense. Her third assignment of error is that her trial lawyer was ineffective for not objecting to the instructions. Because these assignments of error are related, we will address them together.

{¶14} Ms. Geter-Gray has argued that the trial court incorrectly instructed the jury about when the duty to retreat arises. According to her, because it was undisputed that the fight occurred in her home, the court should not have said anything about the duty to retreat.

{¶15} Because Ms. Geter-Gray did not object to the retreat instruction, she has forfeited all but plain error. Crim. R. 52(B). Although Rule 52(B) of the Ohio Rules of Criminal Procedure permits appellate courts to take notice of plain errors, such notice is to be taken "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St. 2d 91, 97 (1978). To prevail on a claim of plain error, Ms.

Geter-Gray must show that, "but for the error, the outcome of the trial clearly would have been otherwise." *State v. Murphy*, 91 Ohio St. 3d 516, 532 (2001) (quoting *State v. Campbell*, 69 Ohio St. 3d 38, 41 (1994)).

{¶16} The trial court told the jury that, to establish self-defense, Ms. Geter-Gray had to prove "that [she] was not at fault in creating the situation giving rise to the offense of felonious assault . . . [that she] had reasonable grounds to believe and an honest belief, even though mistaken, that she was in immediate danger of great bodily harm and that her only means to protect herself from such danger was by the use of deadly force, and [that she] has not violated any duty to retreat, escape or withdraw to avoid the danger." The court explained that Ms. Geter-Gray had a duty to retreat if she created the situation, did not reasonably believe she was in immediate danger, or did not reasonably believe that the only means of escape from the danger was by the use of deadly force.

{¶17} Although the trial court explained the duty to retreat, it also told the jury that, "[i]f [Ms. Geter-Gray] was assaulted in her own home, [she] had no duty to retreat or escape and could use such means as are necessary to repel the assailant from the home . . . ." Accordingly, because the court told the jury that Ms. Geter-Gray did not have a duty to retreat if she was attacked in her own home, Ms. Geter-Gray has not demonstrated plain error. See *Beckett v. Warren*, 124 Ohio St. 3d 256, 2010-Ohio-4, at ¶18 (noting that a jury is presumed to follow the instructions given to it by the judge).

{¶18} Ms. Geter-Gray has next argued that the trial court incorrectly used the term "deadly force" throughout its instructions. She has argued that, by describing the force she used to repel Ms. Williams as deadly, the trial court necessarily implied that the force she used was sufficient to cause "serious physical harm" under Section 2903.11(A)(1). The instructions,

therefore, removed the issue of whether she caused serious physical harm to Ms. Williams from the jury's province.

{¶19} The trial court told the jury that, if Ms. Geter-Gray "had reasonable grounds to believe and an honest belief, even though mistaken, that she was in immediate danger of great bodily harm and that her only means to protect herself from such danger was by the use of deadly force[,]" she "was justified in using that force, even though she was mistaken as to the existence of the danger." Ms. Geter-Gray objected to the instruction for two reasons. She objected to the court's use of the phrase "great bodily harm," arguing that she had a right to defend herself if she was afraid of any bodily harm. She also objected to the court's use of the term "deadly force," arguing that she had the right to defend herself with less than deadly force. After discussion, the court changed its instruction regarding Ms. Geter-Gray's first objection, explaining to the jury that Ms. Geter-Gray had the right to defend herself "even if she was in imminent or immediate danger of bodily harm, just bodily harm[.]" Ms. Geter-Gray told the court that she was satisfied with the instruction. We, therefore, will only review Ms. Geter-Gray's argument for plain error. See Crim. R. 52(B).

{¶20} Regarding the amount of force Ms. Geter-Gray used, the trial court did not say that Ms. Geter-Gray used deadly force, it only instructed the jury to determine whether she "had reasonable grounds to believe . . . that she was in immediate danger of great bodily harm," such that she honestly believed "that her only means of escape from that danger was the use of deadly force[.]" It told the jury to consider Ms. Williams's conduct and "decide if her acts and words caused [Ms. Geter-Gray] to reasonably and honestly believe that she was about to receive serious bodily harm." It also explained that "[t]he law does not measure nicely the degree of force which may be used to repel an attack," and told the jury that, if Ms. Geter-Gray "used more force

than reasonably appears to be necessary under the circumstances, and if the force that is used is so greatly disproportionate to her apparent danger as to show an unreasonable purpose to injure [Ms.] Williams, then the defense of self-defense is not available."

{¶21} Even if the jury concluded that Ms. Geter-Gray honestly believed that her only means of escape was the use of deadly force, it does not mean that the jury concluded that she used deadly force. Moreover, considering that Ms. Geter-Gray admitted to telling an investigating officer that she choked Ms. Williams with an extension cord, she can not demonstrate that she was prejudiced by the court's references to deadly force. See R.C. 2901.01(A)(2) (defining deadly force as "any force that carries a substantial risk that it will proximately result in the death of any person."). We conclude that Ms. Geter-Gray has failed to demonstrate that the trial court's mention of deadly force was plain error.

{¶22} Ms. Geter-Gray has next argued that the trial court should have defined the term "situation" because the phrase "creating the situation giving rise" is ambiguous. If an instruction is claimed to be "ambiguous and therefore subject to an erroneous interpretation," a reviewing court should normally ask "whether there is a reasonable likelihood that the jury has applied the challenged instruction" incorrectly. *State v. Herring*, 94 Ohio St. 3d 246, 250 (2002) (quoting *Boyde v. California*, 494 U.S. 370, 380 (1990)). Because Ms. Geter-Gray did not object to the instruction, however, our review is limited to plain error. See Crim. R. 52(B).

{¶23} The trial court told the jury that, to establish self-defense, Ms. Geter-Gray had to prove "that [she] was not at fault in creating the situation giving rise to the offense of felonious assault ." Ms. Geter-Gray has argued that the instruction impermissibly allowed the jury to find that she created the "situation" by drinking and using drugs with Ms. Williams, even if it believed Ms. Williams was the one who started the fight. She has argued that the court should

have used language from *State v. Gillespie*, 172 Ohio App. 3d 304, 2007-Ohio-3439, instead. *Id*. at ¶17 (concluding that defendant had "to show that he was not 'at fault' in creating the situation; that is, that he had not engaged in such wrongful conduct toward his assailant that the assailant was provoked to attack the defendant.").

{¶24} The language criticized by Ms. Geter-Gray has been approved by the Ohio Supreme Court in several cases. See *State v. Barnes*, 94 Ohio St. 3d 21, 24 (2002); *State v. Palmer*, 80 Ohio St. 3d 543, 563 (1997) (quoting *State v Melchior*, 56 Ohio St. 2d 15, 20 (1978)); *State v. Williford*, 49 Ohio St. 3d 247, 249 (1990) (quoting *State v. Robbins*, 58 Ohio St. 3d 74, paragraph two of the syllabus (1979)). We, therefore, conclude that there was no error, let alone plain error.

{¶25} Ms. Geter-Gray has also argued that the trial court incorrectly instructed the jury that she had the burden of proving self-defense. See *Martin v. Ohio*, 480 U.S. 228, 236 (1987) (concluding that Ohio practice of requiring self-defense to be proved by the defendant is constitutional). She has argued that, even though self-defense is an affirmative defense under Section 2901.05(A) of the Ohio Revised Code, the statute has been abrogated by *District of Columbia v. Heller*, 554 U.S. 570 (2008). According to Ms. Geter-Gray, in *Heller*, the United States Supreme Court held that every individual has an inherent right to self-defense. Because self-defense is a constitutional privilege, an individual acting in self-defense is always acting lawfully. Since the State had the burden of proving that she was acting unlawfully, it was the State's burden to prove that she was not acting in self-defense.

{¶26} Ms. Geter-Gray has misread *Heller*. *Heller* was about whether the Second Amendment confers an individual right to keep and bear arms. *D.C. v. Heller*, 554 U.S. 570, 577 (2008). The Supreme Court held that the Second Amendment protects an individual's right to

possess a firearm. *Id*. at 635. Although it identified the right to self-defense as "central to the Second Amendment right" it did not in any way modify the underlying right to self-defense. *Id*. at 628.

**{¶27}** Ms. Geter-Gray has further argued that her trial lawyer was ineffective for not objecting to the trial court's self-defense instruction, resulting in confusing instructions being given. To establish that her lawyer was ineffective, Ms. Geter-Gray "must show (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Hale*, 119 Ohio St. 3d 118, 2008-Ohio-3426, at ¶204 (citing *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984); *State v. Bradley*, 42 Ohio St. 3d 136, paragraph two of the syllabus (1989)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

**{¶28}** We have reviewed the jury instructions as a whole and conclude that the self-defense instruction was not confusing. See *State v. Jalowiec*, 91 Ohio St. 3d. 220, 231 (2001) (noting that "a single instruction to a jury may not be judged in artificial isolation but must be viewed in the context of the overall charge.") (quoting *State v. Price*, 60 Ohio St. 2d 136, paragraph four of the syllabus (1979)). Accordingly, Ms. Geter-Gray has not established that there is a reasonable probability that, but for her lawyer's failure to object, the result of her trial would have been different. Ms. Geter-Gray's second and third assignments of error are overruled.

## SENTENCE

**{¶29}** Ms. Geter-Gray's fourth assignment of error is that the trial court exercised improper discretion when it sentenced her to prison. In *State v. Kalish*, 120 Ohio St. 3d 23,

2008-Ohio-4912, a plurality of the Ohio Supreme Court determined that, in light of *State v. Foster*, 109 Ohio St. 3d 1, 2006-Ohio-856, when appellate courts review criminal sentences, they must apply a "two-step approach." *Id*. at ¶4. The first step is whether the sentence was contrary to law. *Id*. The second step is whether the court exercised proper discretion in imposing the term of imprisonment. *Id*. at ¶26. The parties agree that *Kalish* provides the correct standard of review in this case.

{¶30} Ms. Geter-Gray has argued that her four-year sentence was excessive in light of her minimal criminal record. She has also argued that it was based on the trial court's incorrect belief that she had hit Ms. Williams "in excess of 30 or 40 times just because you feel disrespected[.]" According to Ms. Geter-Gray, there was no evidence presented that she hit Ms. Williams 30 to 40 times or that she did so because she felt disrespected.

{¶31} Ms. Geter-Gray's felonious assault conviction is a felony of the second degree, meaning the trial court could sentence her to "two, three, four, five, six, seven, or eight years" under Section 2929.14(A)(2) of the Ohio Revised Code. As noted earlier in this opinion, Ms. Geter-Gray testified that, just before the fight began, Ms. Williams interrupted her while she was smoking crack. According to Ms. Geter-Gray, "[y]ou're not supposed to interrupt nobody when [they are smoking crack]. That's disrespectful to whatever they paid to smoke." Furthermore, the State presented 67 photographs of the injuries Ms. Williams suffered to her eyes, cheeks, lips, chin, forehead, nose, arms, hands, fingers, knees, throat, back, and shoulders. The trial court's characterization of the number of times Ms. Geter-Gray hit Ms. Williams was reasonable in light of the medical evidence presented. We conclude that the trial court complied with the applicable sentencing laws and exercised proper discretion when it imposed Ms. Geter-Gray's sentence. Her fourth assignment of error is overruled.

CONCLUSION

{¶32} Ms. Geter-Gray's conviction is not against the manifest weight of the evidence, the trial court's self-defense instruction was not plain error, Ms. Geter-Gray's lawyer was not ineffective, and the trial court exercised proper discretion when it sentenced her. The judgment of the Summit County Common Pleas Court is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CLAIR E. DICKINSON
FOR THE COURT

MOORE, J.
BELFANCE, J.
CONCUR

APPEARANCES:

TODD M. CONNELL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.