[Cite as *State v. Hudson*, 2012-Ohio-1345.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96986**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## RIODEJUONEROL HUDSON

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-546677

**BEFORE:** S. Gallagher, J., Stewart, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** March 29, 2012

**ATTORNEY FOR APPELLANT**

Robert A. Dixon
The Brownhoist Building
4403 St. Clair Avenue
Cleveland, OH   44103


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

By: Alison Foy
Scott Zarzycki
Assistant Prosecuting Attorneys
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH   44113


**Also listed:**

John P. Parker
988 East 185th Street
Cleveland, OH   44119

SEAN C. GALLAGHER, J.:

{¶1} Appellant Riodejuonerol Hudson appeals his conviction for murder. For the reasons stated herein, we affirm.

{¶2} On February 3, 2011, appellant was indicted with one count of aggravated murder in violation of R.C. 2903.01(A), with a forfeiture specification. He pled not guilty to the charge, and the case proceeded to a jury trial. At the close of the state's case, the trial court granted the defense motion for acquittal as to the charge of aggravated murder, finding prior calculation and design had not been shown. However, the court found sufficient evidence to support the lesser-included offense of murder under R.C. 2903.02(A), and the case proceeded on that charge.

{¶3} The charge arose from an incident that occurred on August 17, 2010. Hudson went to a hospital where his girlfriend was about to have a baby. Because Hudson had forgotten his seizure medication, his mother drove him home to get it. They parked in the street outside his home. Hudson saw the victim, Mario Seaborn, and observed him drinking a can of an alcoholic beverage, Four Loko. Hudson testified that Seaborn began yelling profanities at him and made threats upon his life. The scene escalated into a fight in the street between Hudson and Seaborn. There were several witnesses to the fight.

{¶4} During the fight, Hudson was observed striking Seaborn with a bottle and Seaborn struck Hudson with a chain he wore around his neck. Witnesses testified that it

appeared the fight was over, and Hudson headed toward his house. Hudson testified that Seaborn was threatening his and his mother's lives.

{¶5} Hudson proceeded to go into his house to retrieve his medicine. He also grabbed a knife. He claimed he intended to use the knife to scare Seaborn so that he could get in the car and get back to the hospital, though he did not expect Seaborn to just walk away. Witnesses observed Hudson run out of the house toward Seaborn. Hudson stated he showed Seaborn the knife and asked if he could leave. Seaborn swung his chain at Hudson. The two were fighting. Witnesses observed Hudson striking Seaborn, and then Seaborn fell to the ground. Hudson dropped a knife and was heard apologizing to the victim. Seaborn was bleeding from the neck, and 911 was called. Hudson left the scene and was eventually apprehended by the police. Hudson testified he did not know how Seaborn got stabbed in the neck.

{¶6} A chain and two knives were among the items recovered from the scene. DNA matching Seaborn (major contributor) and Hudson (minor contributor) was found on one of the knife blades. The second knife blade had a DNA match to Seaborn as the major contributor, and the minor contributor was inconclusive. The handle of each knife had a DNA mixture for which Seaborn and Hudson could not be excluded as possible contributors.

{¶7} Seaborn was hospitalized and died approximately five months after the incident. The doctor who performed the autopsy found two recent stab wounds, one to the neck and one to the trunk. The doctor also reviewed the corresponding transection of

the spinal cord, which resulted in quadriplegia and associated complications. The cause of death was "acute bronchopneumonia due to quadriplegia, due to recent stab wound of the neck, with cervical spinal cord and vertebral artery injuries."

{¶8} The trial court instructed the jury on the elements of murder, as well as the inferior-degree offense of voluntary manslaughter, and on self-defense. The jury found Hudson guilty of murder with the forfeiture specification. The court sentenced him to a prison term of 15 years to life. The court further ordered Hudson to forfeit all interest in the two knives. Hudson has appealed his conviction. He raises three assignments of error for our review.

{¶9} Hudson's first assignment of error provides as follows:

I.   The appellant was denied equal protection of law pursuant to the Fourteenth Amendment to the United States Constitution due to purposeful racial discrimination by the state in the jury selection process and failure of the trial court to follow applicable law.

{¶10} In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court recognized that the Equal Protection Clause of the United States Constitution prohibits the use of peremptory challenges in a discriminatory manner to exclude potential jurors solely on account of their race. *Id.* at 89; *see also State v. Hernandez*, 63 Ohio St.3d 577, 581, 589 N.E.2d 1310 (1992). There are three steps involved in adjudicating a *Batson* claim. As expressed by the Ohio Supreme Court in *State v. Bryan*, 101 Ohio St.3d 272, 2004-Ohio-971, 804 N.E.2d 433, ¶ 106:

First, the opponent of the peremptory challenge must make a prima facie case of racial discrimination. Second, if the trial court finds this requirement fulfilled, the proponent of the challenge must provide a racially neutral explanation for the challenge. *Batson*, 476 U.S. at 96–98, 106 S.Ct. 1712, 90 L.Ed.2d 69. However, the "explanation need not rise to the level justifying exercise of a challenge for cause." Id. at 97, 106 S.Ct. 1712, 90 L.Ed.2d 69. Finally, the trial court must decide based on all the circumstances, whether the opponent has proved purposeful racial discrimination. Id. at 98, 106 S.Ct. 1712, 90 L.Ed.2d 69. See, also, *Purkett v. Elem* (1995), 514 U.S. 765, 767-768, 115 S.Ct. 1769, 131 L.Ed.2d 834. A trial court's findings of no discriminatory intent will not be reversed on appeal unless clearly erroneous. *State v. Hernandez* (1992), 63 Ohio St.3d 577, 583, 589 N.E.2d 1310, following *Hernandez v. New York* (1991), 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395.

{¶11} Further, "[i]n step three, the trial court may not simply accept a proffered race-neutral reason at face value, but must examine the prosecutor's challenges in context to ensure that the reason is not merely pretextual." *State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, 873 N.E.2d 1263, ¶ 65.

{¶12} In this case, the state's exercise of its peremptory challenges resulted in the removal of two African-American persons as jurors. Prospective juror No. 5 was peremptorily challenged without objection. When the state exercised its second peremptory challenge to excuse prospective juror No. 4, defense counsel raised a *Batson* challenge on the basis that it was the second African-American juror excused. Upon this challenge, the court required the state to provide a race-neutral reason for excusing the juror. The state indicated that the juror had a brother and a father who were in the criminal justice system and, despite not knowing much about his brother's case, the juror felt his brother was not treated fairly by the justice system. Defense counsel argued that the state had failed to articulate an appropriate non-racial basis for the excusal of juror

No. 4.  The court considered the arguments of counsel and rejected the *Batson* challenge.

**{¶13}** Our review of the record reflects that the only challenge presented was to juror No. 4.  The state articulated a race-neutral reason for striking the juror, which was consistent with the juror's answers during voir dire questioning.  The juror indicated that both his father and brother had been convicted and incarcerated.  Further, despite not knowing the details of his brother's conviction, the juror expressed his belief that his brother had not been treated fairly by the criminal justice system.  The fact that the juror claimed he could be fair and impartial in this case does not establish that the proffered reason was pretextual.

**{¶14}** Although Hudson complains that the record is devoid of an analysis by the trial court, "the trial court is not compelled to make detailed factual findings to comply with *Batson*."  *Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, 873 N.E.2d 1263, at ¶ 98. The record reflects that the trial court provided the parties a reasonable opportunity to make their respective records, and the court expressed a clear rejection of the *Batson* challenge.  Because we do not find the trial court's determination was clearly erroneous, we overrule the first assignment of error.

**{¶15}** Hudson's second assignment of error provides as follows:

II.  The verdict below was against the manifest weight of the evidence.

**{¶16}** When reviewing a claim challenging the manifest weight of the evidence, the test is as follows:

"The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶17}** Hudson was convicted of murder in violation of R.C. 2903.02(A), which provides in pertinent part as follows: "No person shall purposely cause the death of another * * *." "Purposely" is defined in R.C. 2901.22(A) as follows:

(A) A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.

**{¶18}** Hudson argues there was a lack of evidence supporting a specific intent to cause death. Our review reflects that Hudson engaged in a fight with Seaborn in the street outside his home. In the course of the fight, Hudson was observed striking Seaborn with a bottle and Seaborn struck Hudson with a chain. Hudson retreated to his

home and retrieved a knife. Witnesses observed him running out of his home toward Seaborn. Hudson admitted he was carrying a knife and displayed it to Seaborn. As they re-engaged in a fight, Hudson was observed striking Seaborn, who fell to the ground. Hudson dropped a knife and was heard apologizing to Seaborn. Seaborn was bleeding from the neck, and 911 was called. Hudson left the scene and was later apprehended. While Hudson testified that he did not remember stabbing Seaborn, the jury could have found his testimony was self-serving and lacked credibility. The stab wound to Seaborn's neck caused quadriplegia and eventually led to the death of Seaborn. Although Seaborn did not die instantly, ultimately his death was caused by the neck wound that was inflicted. Upon our review, we find the jury could reasonably infer from the evidence that Hudson's purpose in striking Seaborn in the neck with a knife was to kill him. Additionally, the jury was entitled to reject Hudson's claim of self-defense.

{¶19} Hudson further claims that the evidence, at best, supported a charge of voluntary manslaughter. The jury was instructed on both murder and the inferior-degree offense of voluntary manslaughter. A person commits voluntary manslaughter when he knowingly causes the death of another "while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force." R.C. 2903.03. While there was evidence that Seaborn had struck Hudson with a chain during the fight and threatened to kill him, the jury could find he had sufficient time to cool off when he retreated to his home. Further, the jury could reject his claim that he was legally

provoked when he returned to the street, charged Seaborn with a knife, and stabbed him in the neck.

{¶20} Upon our review, we find this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury neither lost its way nor created a manifest miscarriage of justice in convicting Hudson of murder. Accordingly, we overrule Hudson's second assignment of error.

{¶21} Hudson's third assignment of error provides as follows:

III.   The requirement under Ohio law that the defendant bears the burden of proof for the defense of self-defense is unconstitutional in light of recent U.S. Supreme Court decisions pertaining to the Second Amendment right to keep and bear arms.

{¶22} Hudson is seeking to have R.C. 2901.05(A), which requires the defendant to bear the burden of proof when raising a self-defense claim, declared unconstitutional. He recognizes that the United States Supreme Court upheld the constitutionality of R.C. 2901.05(A) in *Martin v. Ohio*, 480 U.S. 228, 233-234, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987). However, he claims a different result is now warranted in light of the ruling in *Dist. of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008).

{¶23} Initially, as an inferior court to the United States Supreme Court, we are bound to follow the *Martin* decision and have no authority to overturn it. *State v. Loyed*, 8th Dist. No. 83075, 2004-Ohio-3961, ¶ 33. Further, this court has previously rejected

the argument that *Heller* requires a different result. *State v. Warmus*, 8th Dist. No. 96026, 2011-Ohio-5827, ¶ 42-47; *see also State v. Geter-Gray*, 9th Dist. No. 25374, 2011-Ohio-1779, ¶ 25-26 (rejecting similar argument).

**{¶24}** In *Heller*, the Court held that the Second Amendment protects an individual's right to possess a firearm in the home for the purpose of self-defense. 554 U.S. at 635-636. In doing so, the Court recognized that self-defense is a "central component" to the right to bear arms. *Id.* at 599. While *Heller* recognizes a right to self-defense, "nothing in *Heller* purports to alter the way the states have defined self-defense." *Warmus* at ¶ 47. For these reasons, we overrule Hudson's third assignment of error.

**{¶25}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, JUDGE

MELODY J. STEWART, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR