[Cite as *State v. Hudson*, 2013-Ohio-1444.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 98499**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## RIO HUDSON

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-546677

**BEFORE:** Kilbane, J., Stewart, A.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** April 11, 2013

**ATTORNEY FOR APPELLANT**

John P. Parker
988 East 185th Street
Cleveland, Ohio 44119

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
T. Allan Regas
Assistant County Prosecutor
The Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, J.:

**{¶1}** Appellant, Rio Hudson, appeals from the order of the trial court that denied his petition for postconviction relief. For the reasons set forth below, we affirm.

**{¶2}** On February 3, 2011, Hudson was indicted on one count of aggravated murder in violation of R.C. 2903.01(A) with a forfeiture specification, in connection with the stabbing death of Mario Seaborn ("Seaborn"). The matter proceeded to a jury trial on May 25, 2011.

**{¶3}** As set forth in Hudson's direct appeal, *State v. Hudson*, 8th Dist. No. 96986, 2012-Ohio-1345 ("*Hudson I*"), the evidence at trial established the following events:

> Hudson went to a hospital where his girlfriend was about to have a baby. Because Hudson had forgotten his seizure medication, his mother drove him home to get it. They parked in the street outside his home. Hudson saw the victim, Mario Seaborn, and observed him drinking a can of an alcoholic beverage, Four Loko. Hudson testified that Seaborn began yelling profanities at him and made threats upon his life. The scene escalated into a fight in the street between Hudson and Seaborn. There were several witnesses to the fight.
>
> During the fight, Hudson was observed striking Seaborn with a bottle and Seaborn struck Hudson with a chain he wore around his neck. Witnesses testified that it appeared the fight was over, and Hudson headed toward his house. Hudson testified that Seaborn was threatening his and his mother's lives.
>
> Hudson proceeded to go into his house to retrieve his medicine. He also grabbed a knife. He claimed he intended to use the knife to scare Seaborn so that he could get in the car and get back to the hospital, though he did not expect Seaborn to just walk away. Witnesses observed Hudson run out of the house toward Seaborn. Hudson stated he showed Seaborn the knife

and asked if he could leave.  Seaborn swung his chain at Hudson.  The two were fighting.  Witnesses observed Hudson striking Seaborn, and then Seaborn fell to the ground.

*Hudson I* at ¶ 3-5.

{¶4}  The aggravated murder charge was dismissed by the trial court pursuant to Crim.R. 29, and the trial court subsequently instructed the jury on the elements of murder, as well as the inferior-degree offense of voluntary manslaughter and on self-defense. Hudson was convicted of the lesser charge of murder and was sentenced to a prison term of 15 years to life.  On direct appeal, Hudson asserted that the State improperly exercised its peremptory challenges in order to discriminate against him, that the verdict was against the manifest weight of the evidence, and that it is unconstitutional to require a defendant to bear the burden of proof in a self-defense claim.

{¶5}  This court affirmed the conviction.  *Hudson I*.  As is relevant herein, this court rejected Hudson's challenge to the manifest weight of the evidence and stated:

Our review reflects that Hudson engaged in a fight with Seaborn in the street outside his home.  In the course of the fight, Hudson was observed striking Seaborn with a bottle and Seaborn struck Hudson with a chain. Hudson retreated to his home and retrieved a knife.  Witnesses observed him running out of his home toward Seaborn.  Hudson admitted he was carrying a knife and displayed it to Seaborn.  As they re-engaged in a fight, Hudson was observed striking Seaborn, who fell to the ground. Hudson dropped a knife and was heard apologizing to Seaborn. Seaborn was bleeding from the neck, and 911 was called.  Hudson left the scene and was later apprehended.  While Hudson testified that he did not remember stabbing Seaborn, the jury could have found his testimony was self-serving and lacked credibility.  The stab wound to Seaborn's neck caused quadriplegia and eventually led to the death of Seaborn. Although Seaborn did not die instantly, ultimately his death was caused by the neck wound that was inflicted.  Upon our review, we find the jury could reasonably infer from the evidence that Hudson's purpose in striking Seaborn in the

neck with a knife was to kill him. Additionally, the jury was entitled to reject Hudson's claim of self-defense.

Hudson further claims that the evidence, at best, supported a charge of voluntary manslaughter. The jury was instructed on both murder and the inferior-degree offense of voluntary manslaughter. * * * While there was evidence that Seaborn had struck Hudson with a chain during the fight and threatened to kill him, the jury could find he had sufficient time to cool off when he retreated to his home. Further, the jury could reject his claim that he was legally provoked when he returned to the street, charged Seaborn with a knife, and stabbed him in the neck.

*Hudson I* at ¶ 18-19.

{¶6} On March 7, 2012, Hudson filed a petition for postconviction relief pursuant to R.C. 2953.21, claiming that his trial counsel was ineffective. Hudson asserted that the jury should have been instructed on defense of another, because the victim attacked Hudson's mother, and one of the jurors averred that he "would have liked to [have seen] the defense of another brought in, it seemed * * * that it applied." Hudson also maintained that "at least one juror" erroneously believed that "manslaughter was to be considered in the event petitioner was found not guilty of murder."

{¶7} Hudson additionally asserted that his trial counsel did not properly investigate the matter and present available witnesses, including Jordan Appleton ("Appleton"), who Hudson claimed witnessed the altercation; Doug Vest, who could establish the "lack of violence concerning [Hudson]"; Tracy Jones and Travis Jones, who could testify regarding Hudson's good character and "lack of anger or violence"; and Taushe Moses, the mother of Hudson's child. Hudson also maintained that his trial counsel was ineffective for failing to investigate and present evidence concerning "Four

Loko," a beverage that the victim was reportedly drinking on the night of the stabbing. Finally, Hudson argued that counsel's errors cumulatively deprived him of a fair trial.

{¶8} The trial court determined that Hudson's claims of ineffective assistance of trial counsel did not warrant postconviction relief. The court concluded that the claim regarding an instruction on the defense of another was barred by res judicata. The court also concluded that Evid.R. 404(A) and Evid.R. 602 barred introduction of the additional witnesses listed in Hudson's petition for postconviction relief, and that, in any event, testimony from these witnesses would have been cumulative, biased, and would not have changed the result at trial. The court additionally ruled that the newspaper articles and the Wikipedia article concerning "Four Loko," were insufficient to warrant a new trial in the absence of expert testimony supporting the alleged negative effects of this beverage. Finally, the trial court concluded that the juror's affidavit regarding his deliberative process was inadmissible under Evid.R. 606(B) and was insufficient to impeach the verdict.

{¶9} Hudson now appeals and assigns seven errors for our review. His first assignment of error states:

The doctrine of res judicata did not bar the claims set forth by appellant and the trial court's finding is not supported by the record and violates the [Fourteenth Amendment of the Constitution of the United States.]

{¶10} In determining whether a trial court erred in denying a motion for postconviction relief without a hearing, the appellate court applies the abuse of discretion

standard. *State v. Watson*, 126 Ohio App.3d 316, 324, 710 N.E.2d 340 (12th Dist.1998).

**{¶11}** In order to obtain postconviction relief, appellant must claim that "there was such a denial or infringement of [his] rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States." R.C. 2953.21(A)(1).

**{¶12}** Under the doctrine of res judicata,

'a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the petitioner at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment.'

*State v. Szefcyk*, 77 Ohio St.3d 93, 95, 1996-Ohio-337, 671 N.E.2d 233, quoting *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967), paragraph nine of the syllabus.

**{¶13}** In this matter, Hudson asserted that he had ineffective trial counsel because his attorney failed to request an instruction on the defense of another, and failed to obtain a private investigator to find "key witnesses," including alleged eyewitness Appleton and various other witnesses, to testify regarding his favorable "characteristics."

**{¶14}** The issue of Hudson's defense of another, that is, his mother, who accompanied him to get his medication prior to the attack, was clearly known at the time of trial, as this court observed in *Hudson I*.

Because Hudson had forgotten his seizure medication, his mother drove him home to get it.  * * *  Hudson testified that Seaborn was threatening his and his mother's lives.

*Hudson I* at ¶ 3-4.

Accordingly, this claim, the claim of defense of another, is based upon evidence in the original trial record and clearly could have been raised on appeal; therefore, it is barred by res judicata. *State v. Vinzant*, 2d Dist. No. 19295, 2003-Ohio-2522, ¶ 24; *State v. Young*, 10th Dist. No. 05AP-641, 2006-Ohio-1165.

{¶15} As to the claim that Hudson's trial counsel should have hired an investigator to find key witnesses, including alleged eyewitness Appleton, Hudson failed to present an affidavit from this alleged fact witness or other evidentiary support for this portion of the claim for relief. R.C. 2953.21(C)

{¶16} As to Hudson's claim that trial counsel failed to present other witnesses concerning his good "characteristics," we note that decisions as to the evidence to be introduced and the witnesses to interview are within the purview of defense counsel's trial strategy and tactics. *State v. Silverman,* 10th Dist. Nos. 06AP-1278-1280, 2007-Ohio-6498; *State v. Cline*, 10th Dist. No. 05AP-869, 2006-Ohio-4782, ¶ 22. This rule likewise extends to the decision as to whether or not to call character witnesses. *State v. Williams*, 10th Dist. No. 05AP-339, 2006-Ohio-2197, ¶ 28. In any event, these newly identified individuals did not witness the incident, so there is no basis upon which we may conclude that Hudson was prejudiced by their absence at trial. As noted by the trial court, these individuals were not at the scene of the crime and their testimony does not bear upon the operative facts of this matter. *Accord State v. Briscoe*, 8th Dist. No. 77832, Ohio App. LEXIS 5505 (Nov. 22, 2000).

{¶17} In accordance with the foregoing, the first assignment of error is without merit.

{¶18} The second assignment of error states:

An evidentiary hearing should have been conducted since the Appellant supported his petition with evidence dehors the record that supported the relief he sought and the failure to conduct such hearing violated R.C. 2953.21 and the Fourteenth Amendment to the federal Constitution.

{¶19} Before granting a hearing for a petition for postconviction relief, the court "shall determine whether there are substantive grounds for relief." R.C. 2953.21(C). The petitioner must show in his petition for postconviction relief that such errors resulted in prejudice before a hearing is scheduled. *State v. Jackson*, 64 Ohio St.2d 107, 112, 413 N.E.2d 819 (1980).

{¶20} In this matter, Hudson's claim regarding an instruction on the defense of another was barred by res judicata. His claim regarding his trial counsel's failure to locate alleged eyewitness Appleton was not properly supported. The claim regarding counsel's failure to present the other witnesses simply challenged a tactical decision insofar as counsel did not present testimony from character witnesses. The claim regarding the beverage Four Loko is without merit. The claim regarding cumulative error is without merit in the absence of any other meritorious claim. Accordingly, the trial court did not err in concluding that Hudson had not established substantive grounds for relief, so he was not entitled to an evidentiary hearing. R.C. 2953.21(C).

{¶21} The second assignment of error is without merit.

{¶22} The third and fourth assignments of error are interrelated and state:

The trial court erred in failing to allow Appellant to conduct discovery, in violation of the Fourteenth Amendment to the federal Constitution.

The trial court failed to follow well-established rules for resolution of federal claims in violation of the federal Constitution.

{¶23} It is well settled that there is no right to conduct discovery in postconviction proceedings. *State v. Cooey*, 9th Dist. Nos. 15895 and 15966, 1994 Ohio App. LEXIS 2281 (May 25, 1994). The court observed:

> An action for postconviction relief based upon a petition to vacate or set aside sentence is a civil action. *State v. Milanovich* (1975), 42 Ohio St.2d 46, 49, 325 N.E.2d 540. The procedures applicable to such an action, however, are those found in Section 2953.21 of the Ohio Revised Code. *State v. Hiltbrand*, 1984 Ohio App. LEXIS 9936 (May 16, 1989), Summit App. No. 11550, unreported, at 2. Section 2953.21 does not provide for discovery. *See State v. Ray*, 1986 Ohio App. LEXIS 7790 (July 30, 1986), Loraine App. No. 12517, unreported; *State v. Smith*, 30 Ohio App.3d 138, 506 N.E.2d 1205 (1986), *certiorari denied* (1986), 479 U.S. 860, 107 S. Ct. 208, 93 L.Ed.2d 138.

{¶24} Accordingly, Hudson had no right to discovery herein.

{¶25} The third and fourth assignments of error are without merit.

{¶26} The fifth and sixth assignments of error state:

> Counsel was ineffective under the Sixth and Fourteenth Amendments to the federal Constitution for failing to secure an investigator then present available defenses.

Counsel was ineffective under the Sixth and Fourteenth Amendments to the federal Constitution for failing to investigate and present the unusual effects of Four Loko.

{¶27} Res judicata bars a petitioner from repackaging evidence or issues that either were, or could have been, raised in the context of the petitioner's trial or direct appeal. *State v. Cochran*, 10th Dist. No. 12AP-73, 2012-Ohio-4077, ¶ 11.

{¶28} In order to establish a claim of ineffective assistance of counsel, it must be shown that an attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶29} In order to establish deficient performance, it must be shown that, under the totality of the circumstances, counsel's representation fell below an objective standard of reasonableness. *Id*. at 688. A court "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id*. at 689. Debatable trial tactics and strategies generally do not constitute deficient performance. *State v. Phillips*, 74 Ohio St.3d 72, 85, 1995-Ohio-171, 656 N.E.2d 643.

{¶30} In order to establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome" of the proceeding. *Id*.

{¶31} As to Hudson's claim that his trial counsel was ineffective for failing to request an investigator and for failing to properly investigate the case and present testimony from Appleton, Doug Vest, Tracy Jones, Travis Jones, and Taushe Moses, this claim is not well taken for the reasons set forth in our discussion of the first and second assignments of error. In short, the decisions as to which witnesses to interview are within the purview of defense counsel's trial strategy and tactics. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland* at 690-691. Further, there was no affidavit or other evidence to support the claim regarding purported eyewitness Appleton. The others, as noted by the trial court, were not at the scene of the crime and their testimony does not bear upon the operative facts of this matter. *Accord State v. Briscoe*, 8th Dist. No. 77832, Ohio App. LEXIS 5505 (Nov. 22, 2000).

{¶32} With regard to Hudson's claim that his trial counsel was ineffective for failing to "investigate and present evidence regarding the unusual effects of the alcoholic beverages that the victim was drinking on the night of his death," we note that at trial, Hudson testified that he observed the victim, Seaborn, drinking a can of an alcoholic beverage, Four Loko, and Seaborn began yelling profanities at Hudson and made threats upon his life. *Hudson I.* The evidence presented by defense counsel therefore linked the beverage to the victim's aggressiveness. In any event, the articles submitted by Hudson state that some health officials believe that Four Loko is dangerous to consumers, may "delay feelings of drunkenness," "has potential health risks," that individuals who

"combine alcohol and caffeine are more likely to suffer alcohol-related injuries," and "may take risks that they otherwise might not take," and may experience "dehydration" or "blackouts." As such, the evidence "does not advance the petitioner's claim beyond mere hypothesis and a desire for further discovery." *State v. Lawson*, 103 Ohio App.3d 307, 659 N.E.2d 362 (12th Dist.1995).

{¶33} With regard to Hudson's claim that "at least one juror" erroneously believed that "manslaughter was to be considered 'in the event' [Hudson] was found not guilty of murder," we note, as an initial matter, that pursuant to Evid.R. 606(B):

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. * * * A juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying will not be received for these purposes.

{¶34} The purpose of the rule is "to maintain the sanctity of the jury room and the deliberations therein." *State v. Hessler*, 90 Ohio St.3d 108, 123, 2000-Ohio-30, 734 N.E.2d 1237. Therefore, Hudson may not rely on a post-verdict affidavit from a juror regarding deliberations concerning a lesser included offense. *State v. Williams*, 7th Dist. No. 07 MA 57, 2008-Ohio-1187, ¶ 15-16. *Accord State v. Jeffers*, 10th Dist. No. 10AP-1112, 2011-Ohio-3555, ¶ 24.

{¶35} Moreover, an "instruction to the effect the jury must consider the principal charge first does not prevent consideration of all submitted offenses or set an agenda for the jury deliberations and does not invade the province of the jury." *State v. Thomas*, 40

Ohio St.3d 213, 533 N.E.2d 286 (1988), quoting *State v. Ogden*, 35 Or. App. 91, 98, 580 P.2d 1049 (1978). In any event, it is clear that Hudson could have argued on direct appeal that the instructions were misleading or erroneous, but did not do so. The claim, therefore, is barred by res judicata.

{¶36} Further, because this court has previously determined that there was sufficient evidence to support Hudson's conviction for murder and that this conviction is not against the manifest weight of the evidence, we can discern no prejudice. *Accord State v. Hillman*, 10th Dist. Nos. 06AP-1230 and 07AP-728, 2008-Ohio-2341, ¶ 47.

{¶37} The fifth and sixth assignments of error are without merit.

{¶38} The seventh assignment of error states:

The cumulative errors deprived the Appellant of a fair trial under the Sixth

and Fourteenth Amendments to the federal Constitution.

{¶39} The cumulative error doctrine provides that while certain errors individually may not be prejudicial, when those errors are combined the aggregate effect denies the appellant a fair trial. *See State v. DeMarco*, 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987), paragraph two of the syllabus.

{¶40} In this matter, none of the individual claims are meritorious, so the claim of cumulative error must likewise fail.

{¶41} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

MELODY J. STEWART, A.J., and
EILEEN T. GALLAGHER, J., CONCUR